Filed 8/17/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JULIE A. CARLSON,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>HOME TEAM PEST DEFENSE, INC.<br>et al.,<br><br>        Defendants and Appellants. | A142219<br><br>(Contra Costa County<br>Super. Ct. No. C1400155) |

**I.**

**INTRODUCTION**

Respondent Julie A. Carlson (Carlson) filed this wrongful termination action against her former employer Home Team Pest Defense, Inc. and related parties (collectively Home). The trial court denied Home's motion to compel arbitration of Carlson's claims, finding that an arbitration agreement Carlson signed when Home first hired her was procedurally and substantively unconscionable. We agree with the trial court's conclusions and also reject Home's contentions that (1) state law unconscionability principles are preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.); and (2) the trial court abused its discretion by refusing to sever unconscionable provisions from the agreement in this case. Accordingly, we affirm the order denying Home's motion to compel arbitration.

1

## II.

## PROCEDURAL AND FACTUAL BACKGROUND

### A. The Complaint

In January 2014, Carlson filed a complaint against Home in which she alleged that she was employed as the office manager at Home's Antioch office from February 4, 2013, until her wrongful termination on July 1, 2013. Carlson sought damages and attorney fees for wrongful termination, harassment, breach of her employment agreement, a wage claim for unpaid overtime (Lab. Code, §§ 510, 515), a claim of retaliation, in violation of Labor Code section 1102.5, and intentional infliction of emotional distress.

### B. Home's Motion to Compel

In March 2014, Home filed a motion to compel arbitration and to stay the superior court proceedings, contending that all of Carlson's claims were subject to binding arbitration pursuant to an arbitration agreement between the parties that was "valid and enforceable as a matter of law." Home supported its motion with a declaration from the general manager of its Antioch office, appellant Mohammed Nadeem (Nadeem).

Nadeem stated that on Carlson's first day of work, he provided her with access to Home's electronic "onboarding system," which contained company policies, including Home's "Agreement to Arbitrate" (the Agreement). Later that day, Carlson objected to the Agreement in an email which stated: "This agreement is far to [*sic*] broad and does not include several very important terms/clause [*sic*] relating to the arbitration. I would like to negotiate the terms of this agreement so that the agreement is equally fair to both parties." The following day, Nadeem arranged a conference call between himself, Carlson and Home's human resources manager (HR Manager) to discuss Carlson's concerns. The HR Manager told Carlson she could review the terms of the Agreement with Home's attorney. In response, Carlson asked who would pay for any arbitration and what firm would perform it. The HR Manager began to explain how costs were handled and that she did not know what firm would be used, but Carlson "cut [her] off," saying that was all the information she needed and she would sign the Agreement. Carlson also

2

said that her attorney had reviewed the Agreement, and told her that it "lacked details that would prove important."

Home also submitted a declaration from its in-house counsel, Jefferson Blandford, who confirmed Carlson's prior employment with Home, and who produced a copy of the Agreement that Carlson "signed electronically," which was kept in her personnel file.[1] Blandford also produced a copy of Home's 13-page "Dispute Resolution Policy" (the Policy or the Dispute Resolution Policy), which was incorporated by reference into the Agreement.

### C. The Agreement

The Agreement stated as follows:

"AGREEMENT TO ARBITRATE

"This Agreement is made and entered into by and between Rollins, Inc. and all their related companies including any parent, subsidiary or affiliate, or any other person or entity acting as its agent, (herein 'Company') and the Employee.

"I desire, as does the Company, to resolve any disputes regarding or arising from my employment in an expeditious and economical fashion. I recognize and agree, as does the Company, that arbitration of such disputes through binding arbitration is in the best interest of both parties. Therefore, in consideration of employment and the mutual promises, covenants, and conditions set forth in this Agreement, I agree, as does the Company, to abide by the Company's Dispute Resolution Policy ('DRP') and to arbitrate any dispute, claim, or controversy regarding or arising out of my employment (as defined by the Company's DRP, a copy of which I may request at any time) that may arise between me and the Company, its parent, subsidiaries, affiliates or any other persons or entities acting as its agent. The parties agree that the Company's operations directly

---

[1] What Carlson actually signed was an electronic acknowledgement form which stated that the employee had reviewed and agreed to comply with the terms of the following Home "policies": Agreement to Arbitrate Policy, Equal Employment Opportunity Diversity & Respect Policy, Code of Business Conduct, Distracted Driving Policy, GPS Policy, HomeTeam Vehicle Policy, Personal Protective Equipment Policy, and the Employee Responsibility & Deductions Agreement.

3

affect interstate commerce to the extent that all procedures hereunder contemplated shall be subject to, and governed by, the Federal Arbitration Act (FAA). Unless the parties agree otherwise, the arbitration shall be administered under the applicable rules of the American Arbitration Association ('AAA'). The parties agree that the arbitrator shall follow the substantive law, including the terms and conditions of this Agreement.

"I retain the right to file a claim for workers compensation or unemployment insurance benefits, and certain other claims enumerated in the Company's DRP. The Company retains the right to file a lawsuit for purposes of preventing or stopping any unfair or unlawful competition or solicitation of its customers and employees, and/or misappropriation of its trade secrets.

"I specifically understand that by agreeing to arbitrate, I waive any right to trial by judge or jury in favor of having such disputes resolved by binding arbitration. I understand that any disputes presented to an arbitrator shall be resolved only in accordance with the applicable federal, state, or local law governing such dispute. The award rendered by the arbitrator shall he final and binding, and judgment may be entered on the award in any court having jurisdiction thereof. I agree that any arbitration proceeding under this Agreement will not be consolidated or joined with any action or legal proceeding under any other agreement or involving any other employees, and will not proceed as a class action, collective action, private attorney general action or similar representative action.

"If any provision, or portion thereof, of this Agreement is found to be invalid or unenforceable, it shall not affect the validity or enforceability of any other part of this Agreement. Provided, however, that if the sentence in the foregoing paragraph precluding the arbitrator from conducting an arbitration proceeding as a class, collective, representative or private attorney general action is found to be invalid or unenforceable, then the entirety of this Agreement shall be deemed unenforceable.

"I acknowledge that this agreement to arbitrate is not a contract of employment and does not alter my status as an employee at-will (to the extent applicable under state law), and is a free-standing independent contract.

"**By electronically signing, the New Hire Policy Acknowledgement Form, I agree to all the terms and  conditions contained in this form**."  (Original bolding and underscoring.)

The Dispute Resolution Policy referenced in the Agreement sets forth the procedures to resolve any disputes that might arise between Home and its employee.  It defines a "dispute" as including legal claims the employee may have against Home under federal, state, statutory or common law relating to his or her employment with Home, including termination.  Excluded from the definition are those claims the employee may have under the exclusive jurisdiction of a federal or state agency, such as workers compensation, unemployment benefits, claims which must be filed with the National Labor Relations Board (NLRB), employee benefit plan claims, Employee Retirement Income Security Act (ERISA), and criminal complaints.  Also excluded are claims Home may have to prevent unfair or unlawful competition by the employee, including solicitation of Home's customers or the misappropriation of Home's trade secrets.  The Policy also confirms that the Agreement is a mandatory document that must be signed by the employee at the commencement of employment.

Section IV of the Policy sets forth pre-arbitration procedures to be followed by an employee who wishes to demand arbitration, which includes a requirement that the employee first must make a "Request for Dispute Resolution."  Any claims by the employee that are not included in the initial Request for Dispute Resolution are waived and barred from arbitration.  During the resolution process, the employee is prohibited from having any representation, including legal counsel.  If informal resolution is not successful, then under section IV.A. of the Policy, the employee is required to file a separate "Demand for Arbitration" within 90 days after filing of the initial Request for Dispute Resolution.  The Policy does not require that Home follow the Request for Dispute Resolution procedure.

Once a Demand for Arbitration has been timely made, section VII of the Policy gives Home's legal department the right to select in the first instance a "reputable arbitration service" which will provide a list of seven potential arbitrators.  If the

5

employee objects to the selected arbitration service, the parties will use the AAA. Section XII of the Policy provides that the employee must pay a $120 filing fee within 90 days after the employee makes an initial Request for Dispute Resolution. Except for "statutory civil rights claims," the parties agree to split the costs, fees, and expense of the arbitration.

The Policy also contains a severability clause providing that if any portion or provision of the Policy is deemed unenforceable, it will not affect the enforceability of the remaining provisions. That clause specifically states that if a prohibition on class actions or private attorney general actions contained in section XII.D. of the Policy is found to be unenforceable, then the entirety of section XII.D. will be deemed deleted from the Policy.

### D. Carlson's Opposition to the Arbitration Motion

Carlson opposed Home's motion to compel arbitration arguing, among other things, that the Agreement was unconscionable and unenforceable. In her own declaration, Carlson disputed inferences and misleading statements she believes were in Nadeem's declaration. For example, Carlson explained that although Nadeem gave her access to Home's electronic "onboarding system" on her first day of work, she was required to perform the onboarding tasks from her own home computer after work. Furthermore, the reason she refused to sign the Agreement online that evening was because, contrary to Nadeem's representation, she was not given access to the Dispute Resolution Policy. Rather, the Agreement she was allowed to review required her to agree to the Policy she was not able to access from the electronic system. For that reason she sent an email via the website indicating that she wanted to discuss the terms and conditions of her employment agreement, specifically parts relating to arbitration. The next morning, Nadeem called her into his office, where he already had the HR Manager on the speakerphone.

According to her declaration, Carlson told Nadeem and the HR Manager that she had been unable to access the Dispute Resolution Policy, and asked that it be provided to her so she could review it and discuss or negotiate any terms with which she was "not

6

comfortable." But Nadeem and the HR Manager claimed they did not have a copy of the Policy. When Carlson questioned why she was being asked to agree to a policy that she was not allowed to review, the HR Manager offered to try to find a telephone number Carlson could call "in a couple of weeks" to see if someone had a copy of the Policy. The HR Manager made assurances that issues pertaining to the Policy rarely arose, but also advised Carlson that, in any case, Home would not negotiate its terms. Carlson was also told that she could not wait and review the Policy when it became available, but would have to sign her employment agreement that day, or it would be viewed as a refusal of the job offer.

At that point in the conversation, Carlson felt she had no choice but to sign the Agreement. Now that she had been offered a job, Carlson realized that if she refused to sign the Agreement before reading the Dispute Resolution Policy, she would lose the job opportunity and no longer be eligible for unemployment benefits. Therefore, if she did not comply and sign the acknowledgement that day, essentially she would be losing her only other source of income, "i.e. my unemployment benefits." Carlson admitted that she probably did cut off further discourse with the HR Manager by telling her "that's fine," because she realized at that point that nothing else really mattered. She had to "blindly sign this agreement" or she would lose the job offer and her unemployment benefits.

Carlson concluded her declaration by stating that, during the remainder of her employment, she was never provided with a copy of the Policy or with a copy of the American Arbitration Association (AAA) rules referenced in the Agreement. Home's attorneys sent the Policy to her after she filed her lawsuit.

The employment agreement that Carlson signed was attached to her declaration. That agreement contained detailed anticompetitive covenants and confidentiality provisions applicable to the employee. Those provisions also specifically entitled Home to seek judicial intervention, including "temporary, preliminary, final injunctions, temporary restraining orders, and temporary protective orders" in the event the employee violated the anticompetitive or confidentiality provisions. The agreement also entitled

Home to recover its attorney fees and costs "through trial and any subsequent appeal" incurred in the successful enforcement of the agreement.

### E. The Trial Court's Ruling

In an order filed on June 13, 2014, the trial court denied Home's motion to compel arbitration, concluding that the Agreement was both procedurally and substantively unconscionable. The court found that the circumstances under which Home, the stronger party, presented the Agreement to Carlson, the weaker party, constituted procedural unconscionability. Among other things, the court specifically found that the Agreement was presented on a "take-it-or-leave-it" basis, and that there was "oppression" in the manner in which it was presented because Carlson had no choice but to sign it or lose both her job offer and her unemployment benefits.

The finding that the Agreement was also substantively unconscionable was based primarily on the fact that the claims that were exempted from arbitration were those most likely to be brought by Home against Carlson, while those claims Carlson would likely bring were required to be arbitrated, except for those which were legally exempt from arbitration. The court also pointed out that the employment agreement between the parties granted only Home the right to recover its attorney fees and costs associated with such claims. Ultimately, the court concluded the Agreement was one-sided, objectively unreasonable, and lacked mutuality.

Finally, the trial court found that severing all unconscionable provisions from the Agreement would require the court to "rewrite the arbitration agreement," a task the court "cannot do," citing *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124-125 (*Armendariz*), and *Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 857. Therefore, the court concluded that the entire Agreement was unenforceable.

## III.

## DISCUSSION

### A.  Standard of Review

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.  [Citation.]  If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.  [Citations.]  Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.  [Citations.]" (*Robertson v. Health Net of California, Inc*. (2005) 132 Cal.App.4th 1419, 1425.)

In this case the trial court made factual findings based on at least some material disputed evidence.  From those findings, the trial court concluded that Home's Agreement was both procedurally and substantively unconscionable and should not be enforced.  Accordingly, "[t]o the extent there are material facts in dispute, we accept the trial court's resolution of disputed facts when supported by substantial evidence; we presume the court found every fact and drew every permissible inference necessary to support its judgment.  (*Engineers & Architects* [*Assn. v. Community Development Dept.* (1994)] 30 Cal.App.4th [644,] 653.)" (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 953.)

" '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" '  or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" '  or ' "one-sided" ' results.  [Citation.]  'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'  [Citation.]  But they need not be present in the same degree.  'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.'  [Citations.]  In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is

unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114, italics omitted; see also *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246) (*Pinnacle Museum*).)

If a court finds that an agreement to arbitrate or any clause of such an agreement is unconscionable, the court may "refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) Any challenge to the failure by the trial court to sever an unconscionable provision and enforce the balance of the agreement is reviewed for abuse of discretion. (See *Armendariz, supra*, 24 Cal.4th at p. 124.)

## B. The Agreement Was Procedurally Unconscionable

"Procedural unconscionability exists when the stronger party drafts the contract and presents it to the weaker party on a 'take-it-or-leave-it basis.' [Citation.]" (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 179 (*Serafin*).) "However, the fact that the arbitration agreement is an adhesion contract does not render it automatically unenforceable as unconscionable." (*Id*. at p. 179.) Instead, to determine whether an arbitration agreement satisfies the "procedural element of unconscionability," courts focus on "two factors: oppression and surprise. [Citation.]" (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 246 (*Tiri*). " ' " 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' [Citations.] 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." ' [Citation.]" (*Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 484 (*Zullo*).)

Thus, for example, in *Serafin, supra*, 235 Cal.App.4th 165, this court reviewed an arbitration agreement which was "indisputably . . . a form contract of adhesion, which was presented to Serafin on a 'take-it-or-leave-it basis[,]' " and yet we concluded that other circumstances pertaining to the presentation and execution of that agreement significantly limited the "degree of procedural unconscionability arising from the

adhesive nature of the agreement." (*Id*. at pp. 179-180.) Specifically, the evidence showed that the agreement and rules referenced in the agreement were made available to the employee for review, and when she was asked to sign the agreement, a human resources representative was present "specifically to explain the document and answer any questions Serafin might have [had] about it." (*Id.* at p. 180, italics omitted.)

Last year this division decided *Tiri*, *supra*, 226 Cal.App.4th 231, which found that an arbitration agreement presented to an existing employee was procedurally unconscionable. (*Id.* at p. 245.) The evidence showed that the employee signed a take-it-or-leave-it arbitration agreement because she was afraid she would lose her job if she refused. (*Ibid.*) Highlighting the significance of this fact, we cited a passage from *Armendariz* that echoed and reinforced our concern: "In the employment context, 'the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.'. . ." (*Ibid*., quoting *Armendariz*, *supra*, 24 Cal.4th at p. 115.) In our *Tiri* decision, we also found that the same factors which established that the arbitration agreement was a contract of adhesion supported the trial court's implied finding that the agreement was procedurally unconscionable. (*Tiri*, at pp. 245-246.)

In *Zullo*, *supra*, 197 Cal.App.4th 477, an appellate court found that there was "really no question" that an arbitration agreement was procedurally unconscionable when the facts showed that the agreement was a contract of adhesion presented on a take-it or leave-it basis; AAA rules incorporated into the agreement were not provided to the employee; and it was "oppressive" to require the employee to make an independent inquiry to find the rules just so she could understand the agreement she was about to sign. (*Id*. at pp. 485-486.)

In *Trevedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 (*Trivedi*), this division found that the failure to provide an employee with a copy of AAA arbitration rules that were incorporated by reference into an arbitration agreement

11

supported a finding that the arbitration agreement as a whole was procedurally unconscionable.[2]

The manner in which the Agreement here was presented to Carlson resulted in more than a baseline adhesion contract. The Agreement referenced the Dispute Resolution Policy, but it was not available to Carlson either online or at the meeting she attended with Nadeem and the HR Manager, who were asked specifically by Carlson about its content. Instead, Carlson was told she might be given a telephone number that she could call "in a couple of weeks" to see if someone could provide her with a copy of the Policy, but that she needed to sign the employment contract, including the Agreement, that day or her job offer would be withdrawn. In fact, Carlson was never provided with a copy of the Policy while she was employed by Home; instead, she first saw it when Home's attorneys sent it to her after she filed the underlying action. Nor was Carlson provided with a copy of the AAA rules made applicable to any dispute, as stated in the Agreement. Perhaps most important to the procedural unconscionability analysis, Carlson declared, and the trial court found, that the Agreement was nonnegotiable and she had no choice but to sign it at her meeting with Nadeem and the HR Manager, or she would lose *both* her job offer and her ongoing unemployment benefits based on that refusal to sign.

On this record, we conclude that the degree of procedural unconscionability cloaking Carlson's signing of the Agreement was high, relative to other cases where courts have found that arbitration agreements were procedurally unconscionable. (See, e.g., *Tiri*, *supra*, 226 Cal.App.4th 231; *Zullo*, *supra*, 197 Cal.App.4th 477; *Trevedi*,

---

[2] We recognize that since we decided *Trivedi*, courts of appeal have come to differing conclusions as to whether the failure to provide the employee with a copy of the applicable arbitration rules and procedures *alone* renders the arbitration agreement procedurally unconscionable. (*Tiri*, *supra*, 226 Cal.App.4th at p. 246, fn. 9.) However, because of the abundance of facts supporting a finding of procedural unconscionability in this case we need not, and do not, ground our finding solely on this point.

12

*supra*, 189 Cal.App.4th 387.)  Without question it was oppressive, and the failure to disclose the terms of arbitration and the applicable rules also constitute surprise.[3]

In reaching this conclusion we note that our facts are materially more egregious than those extant in Division One's decision in *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462 (*Peng*), a case heavily relied on by Home.  There, the employee was given 25 days to consider a job offer and the arbitration agreement, the employee never objected to the agreement, nor did she "express any reluctance to sign the [a]greement [or] concerns about [its] terms at any time during her employment [with the defendant]." (*Id.* at p. 1466.)[4]  Given these facts, it is not surprising that the court enforced the employment arbitration agreement.  But here, by contrast, Carlson was required to sign the Agreement without time for reflection, and despite her objections to signing it after being told that a copy of the Dispute Resolution Policy was not available to her for review.

Under these facts, we agree with the trial court that a high degree of procedural unconscionability accompanied the signing of the Agreement in this case.

## C.  The Agreement Was Substantively Unconscionable

"Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create ' " 'overly harsh' " ' or ' " 'one-sided' " ' results. [Citations.]" (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1469.)  "An arbitration agreement lacks 'basic fairness and mutuality if it requires one contracting

---

[3]  We emphasize that in reviewing the court's determinations as to unconscionability we consider the evidence in the light most favorable to the court's determination and review those findings for substantial evidence.  (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89.)

[4]  *Peng* has joined the juridical camp opining that the mere failure to provide a copy of the arbitration rules applicable to the agreement does not itself establish procedural unconscionability absent evidence that the rules contain unexpected provisions that limit the employee's claims or available relief.  (*Peng*, *supra*, 219 Cal.App.4th at pp. 1471-1472.)  Review has been granted by the Supreme Court in another Division One case following *Peng* upon which Home mistakenly relies here, *Galen v. Redfin Corp.* (2014) 227 Cal.App.4th 1525, review granted Nov. 12, 2014, S220936.

party, but not the other, to arbitrate all claims arising out of the same transaction or occurrences . . . . [Citation.]" (*Serafin*, *supra*, 235 Cal.App.4th at p. 181, fn. omitted.)[5]

"Courts have found one-sided employer-imposed arbitration provisions unconscionable where they provide that employee claims will be arbitrated, but the employer retains the right to file a lawsuit in court for claims it initiates, or where the types of claims likely to be brought by employees (wrongful termination, discrimination etc.) are the only ones made subject to arbitration. [Citations.]" (*Serafin*, *supra*, 235 Cal.App.4th at p. 181.)

In *Trivedi*, *supra*, 189 Cal.App.4th 387, this court affirmed a finding of substantive unconscionability based in part on a trial court's assumption that a provision exempting claims for injunctive relief favored the employer. (*Id.* at p. 397.) As we explained, the trial court's conclusion was "not a novel or unsupportable proposition." (*Ibid.*, citing *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 725 & *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 176.)

Unlike *Trivedi*, here we need not infer the value and importance to Home of reserving for litigation its competition and intellectual property claims, because the Home employment agreement Carlson was required to sign along with the Agreement is evidence of this fact. The employment agreement spells out in detail anticompetitive covenants and confidentiality provisions applicable to Carlson's work at Home. It also specifically entitles Home to seek judicial intervention, including "temporary, preliminary, final injunctions, temporary restraining orders, and temporary protective orders" in the event the employee violates the anticompetitive or confidentiality proceedings, and entitles Home to recover its attorney fees and costs "through trial and any subsequent appeal" incurred in the successful enforcement of the employment

---

[5] Our Supreme Court has granted review of numerous cases involving the enforceability of arbitration agreements, including claims of unconscionability based on lack of mutuality. (*Tiri*, *supra*, 226 Cal.App.4th at p. 243, fn. 6; see, e.g., *Baltazar v. Forever 21, Inc.*, review granted Mar. 20, 2013, S208345; *Leos v. Darden Restaurants, Inc.*, review granted Sept. 11, 2013, S212511 [briefing deferred pending disposition of *Baltazar*].)

14

agreement. The importance that Home retain access to the courts for these types of claims was mirrored in the Agreement language stating that "The Company retains the right to file a lawsuit for purposes of preventing or stopping any unfair or unlawful competition or solicitation of its customers and employees, and/or misappropriation of its trade secrets."

Thus, we conclude that the trial court's findings that the Agreement was one-sided, objectively unreasonable, and lacked mutuality was supported by substantial evidence. In light of the high degree of procedural unconscionability associated with the presentation and execution of the Agreement, the fact that Home was exempt from having to arbitrate its most likely claims against Carlson while Carlson was required to relinquish her access to the courts for all of her nonstatutory claims alone warrants a conclusion that the Agreement was unenforceable under the sliding-scale test set forth by our Supreme Court. (*Armendariz*, *supra*, 24 Cal.4th at p. 114; *Pinnacle Museum*, *supra*, 55 Cal.4th at p. 246.) But, there are other one-sided provisions that aggravate the substantive unconscionability of the Agreement.

For example, the Dispute Resolution Policy requires an employee to make a Request for Dispute Resolution before demanding arbitration and, any claims by the employee not included in this initial request, are waived and barred from any subsequent arbitration. However, the Policy does not impose any requirement that Home itself follow the Request for Dispute Resolution procedure before commencing arbitration.

The Policy also states that after an employee has submitted a Request for Dispute Resolution, he or she is required to submit to an unspecified form of alternative dispute resolution before demanding arbitration. During that process, the employee is forbidden from being represented by legal counsel. Again, this requirement for pre-arbitration unrepresented participation in alternative dispute resolution applies only to employee claims. The potential perniciousness of this type of mandatory pre-arbitration settlement efforts affecting the employee's claims was discussed in *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267 (*Nyulassy*).

15

*Nyulassy*, *supra*, 120 Cal.App.4th 1267 involved an arbitration agreement that was substantively unconscionable in three respects: it required only the employee to arbitrate all of his disputes with the defendant employer; it placed time limitations on the employee's assertion of claims against the employer; and it required the employee "to submit to discussions with his supervisors in advance of, and as a condition precedent to, having his dispute resolved through binding arbitration." (*Id*. at pp. 1281-1282.) With regard to this last aspect, the court stated: "While on its face, this provision may present a laudable mechanism for resolving employment disputes informally, it connotes a less benign goal. Given the unilateral nature of the arbitration agreement, requiring plaintiff to submit to an employer-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggests that defendant would receive a 'free peek' at plaintiff's case, thereby obtaining an advantage if and when plaintiff were to later demand arbitration." (*Id.* at pp. 1282-1283.)

Here, the alternative dispute mechanism built into the Agreement would give Home an even more significant advantage than the informal dispute resolution mechanism criticized in *Nyulassy*, *supra*, 120 Cal.App.4th at page 1283, because Carlson was explicitly forbidden legal representation. Furthermore, like *Nyulassy*, the Agreement in this case requires only the employee to arbitrate his or her most likely claims and also places a time limitation on the employee's assertion of those claims that does not apply to the employer. In this regard, the Agreement provides that if informal resolution is not successful, the employee must file a separate Demand for Arbitration within 90 days after filing her initial Request for Dispute Resolution. The practical effect of this last provision is that, while Carlson may present her claims to Home well within the otherwise applicable legal statutes of limitations, the addition of a 90-day time limitation to demand arbitration acts to limit the time that would be available otherwise for filing a complaint in superior court. Because there is no requirement that Home make a pre-arbitration Request for Dispute Resolution, there is no time limit applicable to Home's Demand for Arbitration.

16

Finally, the Agreement requires the employee to pay a $120 filing fee within 90 days after making an initial Request for Dispute Resolution, after which all fees and expenses incurred in connection with the arbitration are to be split between the parties. Our Supreme Court has expressly held that a provision of this nature which imposes an obligation to pay fees and expenses of arbitration that would not be required to bring a matter to court is substantively unconscionable. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1082-1085; see also *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 115-116 (*Martinez*).)

Apparently recognizing that its fee and cost provisions may render the Agreement substantively unconscionable, Home agreed below to forego any attempt to enforce these fee and cost provisions. But, similar after-the-fact attempts to avoid the effect of an unconscionable provision have been rejected. (*Martinez*, *supra*, 118 Cal.App.4th at pp. 116-117 [willingness to change a provision of an arbitration agreement so it conforms to law does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy.]; *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 280 [same].) Indeed, the risk that a claimant may bear substantial costs of arbitration, not just the actual imposition of those costs, may discourage an employee from exercising the right to pursue any remedy against the employer. (*Armendariz*, *supra*, 24 Cal.4th at p. 110.)

For all these reasons, we conclude that the Agreement was both procedurally and substantively unconscionable, and unenforceable.[6]

## D.  The Substantive Unconscionability Analysis Is Not Preempted by the FAA

Home contends that, even if the Agreement is substantively unconscionable, it must be enforced because it is a valid agreement under the FAA as interpreted by both the United States and the California Supreme Courts.  Under section 2 of the FAA (9 U.S.C. § 2), an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  This section reflects a liberal federal policy favoring arbitration.  Furthermore, while the savings clause permits agreements to arbitrate to be invalidated by " 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' " the savings clause does not apply to defenses that are unique to arbitration, or that "derive their meaning from the fact that an agreement to arbitrate is at issue.  [Citations.]" (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, 131 S.Ct. 1740, 1746 (*Concepcion*).)

The question as to what degree, if at all, arbitration agreements can be found to be unenforceable because they contain provisions that are substantively unconscionable was addressed by our Supreme Court in *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 (*Sonic II*).  This opinion followed the issuance of the first opinion in that case, which was granted certiorari by the United States Supreme Court, vacated, and remanded

---

[6] As demonstrated by our analysis above, the substantive unconscionability inquiry focuses on whether the contract terms are unfairly one sided.  (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 468-469, abrogated on another ground as stated in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360.)  Some courts alternatively have framed the test as whether the disputed provisions " ' " ' "shock the conscience" ' "' ' " (*Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 736), are " ' "overly harsh," ' " (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532), or " ' "unduly oppressive" ' " (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925).  The issue of what is the proper test was recently clarified by our Supreme Court in *Sanchez v. Valencia Holding Co., LLC* (Aug. 3, 2015) 2015 Cal. LEXIS 5292, which stated that all of these formulations essentially embrace a central idea requiring a degree of unfairness, beyond "a simple old-fashioned bad bargain." (*Id.* at pp. *14-*15.)  The Agreement here certainly meets this standard of unconscionability.

18

for our state high court to reconsider in light of *Concepcion*, *supra*, 131 S.Ct. 1740. (*Sonic II*, at p. 1124.)  The holding in *Sonic II* is that post-*Concepcion*, California courts may continue to enforce unconscionable rules that do not " 'interfere[] with the fundamental attributes of arbitration.'  [Citation.]" (*Ibid.*)

In its decision, the *Sonic II* court described the concept of contractual unconscionability as follows: "[T]he core concern of the unconscionability doctrine is the ' " 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " '  [Citations.]  The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " 'overly harsh' " ' [citation], ' "unduly oppressive" ' [citation], ' "so one-sided as to 'shock the conscience" ' [citation], or 'unfairly one-sided' [citation]." (*Sonic II*, *supra*, 57 Cal.4th at p. 1145.)

Here, our conclusion that the Agreement is unconscionable and unenforceable against Carlson does not mandate any procedural rules that are inconsistent with the fundamental attributes of arbitration.  In fact, our principal concern with the Agreement rests on its failure to hold Home to the same obligation *to arbitrate* that it holds Carlson.  Furthermore, our subordinate objections to the provisions in the Agreement requiring Carlson to engage in an unrepresented dispute resolution process for which she must pay a fee to Home, and after which she cannot arbitrate claims not submitted to dispute resolution, are not the least bit antithetical to arbitration as a form of adjudication.

Home contends that the common law doctrine of contractual unconscionability was created to apply only to arbitration agreements, and thus "specifically inhibit[s] the enforcement of arbitration agreements."  We disagree.  It is clear from a reading of the majority's thorough opinion in *Sonic II* that the doctrine is applicable to all contracts enforceable in California. (*Sonic II*, *supra*, 57 Cal.4th at p. 1145 [citing among other authorities 8 Williston on Contracts (4th ed. 2010) § 18.10, p. 91]; see also *Perdue v. Crocker National Bank*, *supra*, 38 Cal.3d at p. 925.)

This issue, too, was addressed again by our Supreme Court in *Sanchez*, *supra*, 2015 Cal. LEXIS 5292, where the court reiterated that the same unconscionability

19

standard applies to both arbitration and nonarbitration contracts. "But the application of unconscionability doctrine to an arbitration clause must proceed from general principles that apply to any contract clause. In particular, the standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain— must be as rigorous and demanding for arbitration clauses as for any contract clause." (*Id.* at p. *17.)[7]

### E. The Trial Court Did Not Abuse Its Discretion

Home's final contention on appeal is that the trial court abused its discretion by refusing to sever the cost-sharing provision from the Agreement rather than by invalidating the entire Agreement. As it did in the trial court, Home takes the position that the cost-sharing provision in the Policy is the only arguably unconscionable term in the Agreement. Therefore, it contends that the trial court abused its discretion by denying Home's request to sever this one allegedly unconscionable term and enforce the remainder of the Agreement.

"A trial court has discretion under Civil Code section 1670.5, subdivision (a) to refuse to enforce an entire agreement if the agreement is 'permeated' by unconscionability. [Citations.] An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision . . . . Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage. [Citations.] 'The overarching inquiry is whether " 'the interests of justice . . . would be furthered' " by severance. [Citation.]' [Citation.]" (*Trivedi*, *supra*, 189 Cal.App.4th at p. 398.)

Here, the trial court's order denying the motion to compel arbitration noted that Home's request to sever the unconscionable part of the Agreement was expressly limited

---

[7] Home also argues that we should follow a relatively recent Ninth Circuit decision in *Mortensen v. Bresnan Communications, LLC* (9th Cir. 2013) 722 F.3d 1151. However, until the United States Supreme Court holds otherwise, we are bound to follow California Supreme Court authority on this issue. (*Montano v. Wet Seal Retail, Inc.* (2015) 232 Cal.App.4th 1214, 1224, fn. 5.)

to the cost-sharing provision. But it ultimately found that even if Home had consented to severance of other parts of the Agreement, the court would not have been able to "fix this arbitration agreement" because "severing its one-sided nature" would require the court "to rewrite the arbitration agreement, which it cannot do."

We conclude that the trial court did not abuse its discretion by refusing to sever objectionable clauses from the Agreement because substantive unconscionability permeated the entire Agreement. As noted in detail above, like the trial court, we have found particularly offensive the provision that required Carlson to arbitrate all of her nonexempt claims while Home enjoyed unfettered access to the court for its most important and likely claims against Carlson. Moreover, only Carlson was required to demand dispute resolution of her claims against Home, and any subsequent arbitration would be limited to those of her claims for which an attempt to settle had been made. During that pre-arbitration period, Carlson would not be allowed representation, including legal counsel. None of these limitations were imposed on Home.

Furthermore, we cannot ignore the fundamental shortcoming inherent in a request to sever substantively unconscionable terms from the Agreement and the 13-page Dispute Resolution Policy incorporated in it when the record establishes such a high level of procedural unconscionability. Severance would result in the modification and enforcement of the Agreement that Carlson was required to sign without the opportunity to review either the Policy or the AAA arbitration rules despite her specific request for them. Indeed, she was threatened with withdrawal of the job offer and faced with the potential of an impecunious future if she insisted on reviewing the very documents Home now seeks to enforce. To rewrite this Agreement in such a way as to eliminate its unconscionable provisions under these circumstances would not further the interests of justice. (*Trevedi*, *supra*, 189 Cal.App.4th at p. 398.)

## IV.

## DISPOSITION

The order denying Home's motion to compel arbitration is affirmed. Costs on appeal are awarded to Carlson.

21

_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
STREETER, J.


A142219, *Carlson v. Home Team Pest Defense, Inc.*

22

Trial Court:                          Contra Costa County Superior Court

Trial Judge:                          Hon. Steven K. Austin

Counsel for Appellant:                JACKSON LEWIS, Tyler A. Brown,
                                      Conor J. Dale

Counsel for Respondent:               LAW OFFICES OF DOUGLAS A.
                                      PRUTTON and Douglas A. Prutton

A142219, *Carlson v. Home Team Pest Defense, Inc.*