Filed 1/25/16  Yeotis v. Warner Pacific Insurance Services CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SOPHIA YEOTIS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WARNER PACIFIC INSURANCE<br>SERVICES INC., et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B245770<br>(Super. Ct. No. 56-2012-<br>00423312-CU-WT-VTA)<br>(Ventura County) |

Sophia Yeotis sued appellants Warner Pacific Insurance Services, Inc., North Ranch Insurance Services, Inc. and WPIM, LLC (hereafter, collectively "Warner") after Warner terminated her employment.  She sued.  Warner moved to compel arbitration under its "Mutual Agreement to Arbitrate Disputes" (Agreement), which Yeotis signed. Finding the Agreement procedurally and substantively unconscionable, the trial court denied Warner's motion.  In the jargon of employment law, we conclude that the Agreement contained some "'procedural and substantive unconscionability,'" which did not permeate it, or render it "'unduly oppressive,'" or unenforceable.[1]  (*Armendariz v. Foundation Health Psychcare Service, Inc.* (2000) 24 Cal.4th 83, 113-114 (*Armendariz*);

---

[1] We apply the jargon of cases discussing arbitration.

Civ. Code,[2] § 1670.5.)  We reverse and remand with instructions to sever the unconscionable terms of the Agreement, and enforce the modified Agreement.

FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Warner hired Yeotis as a sales associate.  In September 2011, she took a leave of absence of approximately two weeks to care for her husband, who was severely ill.

On October 5, 2011, Tracy Morris, Warner's human resources director, sent an e-mail to all Warner employees, including Yeotis.  It stated:

> "I have updated our Company Handbook for California Employees along with our company Injury & Illness Prevention Program (IIPP).  Please review these documents along with the JAMS Employment Arbitration Rules.
>
> "You can locate them on SharePoint under HR/Public Documents; Doc Type:  Informational
>
> "WP Handbook CA 2011-Final.pdf
>
> "Injury & Illness Prevention Program Updated 2011.pdf
>
> "JAMS-employment-arbitration rules-2009
>
> "Upon reading the documents in their entirety, please print the attachment; sign Appendix A, C and the Acknowledgment of Receipt and Understanding/At-Will Agreement and return (all pages) to me no later than October 20, 2011.
>
> "You may return [them] to me via mail, scan or fax (818) 575-2310.
>
> "Thank you for your cooperation and please feel free to contact me with any questions."  (Bold omitted.)

On October 17, 2011, Yeotis signed the Agreement and other documents and acknowledged that she read them before signing them.

---

[2] All statutory references are to the Civil Code unless otherwise stated.

2

On November 11, 2011, Warner terminated Yeotis's employment "because of her excessive instances of tardiness in arriving to work." In 2012, Yeotis filed a complaint alleging multiple causes of action against Warner.[3] Warner filed a motion to compel arbitration. The parties submitted supporting declarations that addressed whether Yeotis received, or had access to, the Rules and Procedures of the Judicial Arbitration and Mediation Services/Endispute (JAMS rules) before she signed the Agreement.

The trial court denied Warner's motion, finding: the Agreement was a procedurally and substantively unconscionable adhesion contract; Yeotis "had no ability to reject it and still keep her job"; and Warner failed to attach the JAMS rules to the Agreement. Citing *Armendariz*, the court concluded the Agreement was substantively unconscionable because it required Yeotis "to pay fees that she would not otherwise have to pay in a court of law" and did not provide "all types of relief that would otherwise be available in court." Statements in the court's ruling imply it found the Agreement lacked mutuality.

## DISCUSSION

### *Unconscionability*[4]

"If a court finds that an agreement to arbitrate or any clause of such an agreement is unconscionable, the court may 'refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the

---

[3] Yeotis sought damages for alleged violations of public policy and discrimination surrounding her requests for family and medical leave, in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.); for interference with family medical leave, in violation of FEHA, the Family and Medical Leave Act (29 U.S.C.A. § 2601 et seq.) and the California Family Rights Act (Gov. Code, § 12945.2) in violation of public policy; and for retaliation for complaints of pregnancy discrimination, in violation of FEHA and public policy.

[4] We reject Warner's claim that the unconscionability defenses are preempted by the Federal Arbitration Act (FAA) pursuant to *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333). Our Supreme Court recently reaffirmed that the FAA does not preempt generally applicable contract defenses, such as unconscionability. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 906 (*Sanchez*); *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142-1145 (*Sonic II*).)

application of any unconscionable clause as to avoid any unconscionable result.' [Citation.]" (*Carlson v. Home Team Pest Defense, Inc*. (2015) 239 Cal.App.4th 619, 630-631 (*Carlson*); § 1670.5, subd. (a).) "'One common formulation of unconscionability is that it refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." [Citation.] . . . [T]he doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'" (*Sonic II*, *supra*, 57 Cal.4th at p. 1133.) Both procedural and substantive unconscionability are necessary before a court may refuse to enforce an arbitration provision. (*Armendariz*, *supra*, 24 Cal.4th at p. 114.) But they need not be present in the same degree. Generally, "a sliding scale approach is taken." (*Fitz v. NCR Corp*. (2004) 118 Cal.App.4th 702, 714 (*Fitz*).) The more substantively oppressive the terms, the less evidence of procedural unconscionability is required, and vice versa. (*Armendariz*, *supra*, at p. 114.)

"'The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as """"overly harsh"""" [citation], """"unduly oppressive"""" [citation], """"so one-sided as to "shock the conscience""""" [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party" [citation]. . . .' Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." (*Sanchez*, *supra*, 61 Cal.4th at pp. 910-911, citing *Sonic II*, *supra*, 57 Cal.4th at pp. 1145, 1148.)

"'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]'" (*Avery v. Integrated Healthcare Holdings, Inc*. (2013) 218 Cal.App.4th 50, 60.) "In keeping with California's strong public policy in favor of arbitration, any doubts

regarding the validity of an arbitration agreement are resolved in favor of arbitration." (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1144.) Section 1670.5, subdivision (a) permits a court to sever unconscionable portions of an arbitration agreement in order to make the remainder of the agreement enforceable. We review for abuse of discretion the trial court's decision whether to sever unconscionable provisions or to refuse to enforce the entire agreement. The latter course is permitted only when the agreement is permeated by unconscionability. (*Armendariz*, *supra*, 24 Cal.4th at pp. 122, 124.) Here, the combined minimum degree of procedural unconscionability and moderate degree of substantive unconscionability did not render the agreement unduly oppressive or unenforceable. The trial court erred in denying the motion to compel arbitration.

*Procedural Unconscionability*

"[P]rocedural unconscionability requires oppression or surprise. ""Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."""" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*)*, LLC* (2012) 55 Cal.4th 223, 247.) By their nature, employment contracts are adhesive, especially when compared with consumer contracts. For example, it is far easier to walk away from an automobile dealership than a job. Our Supreme Court "has acknowledged that adhesion contracts in the employment context typically contain some measure of procedural unconscionability." (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1470.)

Yeotis argues that the Agreement is a contract of adhesion. There was disputed evidence regarding her option to negotiate its terms or reject it without jeopardizing her employment. In signing the Agreement, Yeotis acknowledged: "[I] have carefully read this Agreement[,] understand its terms [and] have been given the opportunity to discuss [it] with [my] own legal counsel, to ask questions about its meaning and to negotiate its terms[.] *I understand that by entering into this Agreement, [I am] knowingly and voluntarily waiving [my] respective rights to have any claim of dispute governed by this Agreement decided by a court or in a jury trial.*" (Italics added.) Her declaration

5

presents a contrary view, stressing her inability to review the Agreement within the time provided by Warner, with ongoing reminders to sign it. In her declaration, Yeotis also states that based on her conversations with fellow Warner employees, she believed she risked losing her job if she did not sign the Agreement. The trial court found that Yeotis had no ability to reject the agreement and still keep her job, which supports its conclusion that the Agreement is an adhesion contract. "However, the fact that an agreement is adhesive is not, alone, sufficient to render it unconscionable." (*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1561.)

In concluding the Agreement was procedurally unconscionable, the trial court relied on Warner's failure to attach the JAMS rules to the Agreement.[5] Standing alone, however, the failure to attach the arbitration rules to an agreement is of minor significance in analyzing procedural unconscionability. (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 691-692 (*Lane*).) For example, in *Lane*, the court concluded that the failure to attach the American Arbitration Association (AAA) rules did not render an agreement procedurally unconscionable where the rules were readily available on the internet, and the plaintiff had the means to access them. Similarly, in *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1466, 1472, the court concluded the failure to attach the AAA rules, standing alone, did not support a finding of procedural unconscionability where an employee had 25 days to consider an offer that included an arbitration agreement. In *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 485-486, the court concluded that the failure to attach the AAA rules added "a bit to the procedural unconscionability" of the agreement. (See *Tiri v. Lucky Chances, Inc*. (2014) 226 Cal.App.4th 231, 246, fn. 9.)

Here, the failure to attach the JAMS rules to the Agreement was of minor significance. Yeotis received Morris's e-mail transmitting the Agreement on a computer

---

[5] Yeotis argues that the failure to attach the rules added an unfair element of surprise because there are significant discrepancies between the JAMS rules and the Agreement as to "other issues, such as discovery." We disagree. As we explain hereafter, in discussing substantive unconscionability, any such discrepancies lack significance.

that she used at Warner. That e-mail identified the JAMS rules and their Warner network file name. In her declaration, Yeotis states that she "never received the 'JAMS' rules," but does not state that she tried, or was unable, to access them on the Warner network. The JAMS rules are readily available on the internet. Any failure by Warner to attach them to the Agreement contributed a minimal degree to its procedural unconscionability.

*Substantive Unconscionability*

"Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create ""overly harsh"" or ""one-sided"" results." (*Roman v. Superior Court*, *supra*, 172 Cal.App.4th at p. 1469.) Warner contends the Agreement is not substantively unconscionable. We conclude that, given the minimal degree of its procedural unconscionability, the degree of substantive unconscionability is not sufficient to render the Agreement unenforceable.

*Costs*

Warner argues that the trial court erred in finding that the costs provision of the Agreement is substantively unconscionable. We disagree.

"[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz*, *supra*, 24 Cal.4th at pp. 110-111, italics in original.) This principle is necessary to "ensure that employees bringing [unwaivable statutory] claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer." (*Id*. at p. 111; *Fittante v. Palm Springs Motors, Inc*. (2003) 105 Cal.App.4th 708, 718-719.) "[B]ecause arbitrators, unlike judges, are paid by the parties, an equal division of costs between employer and employee has the potential in practice of being unreasonably one-sided or burdening an employee's exercise of statutory rights." (*Sonic II*, *supra*, 57 Cal.4th at pp. 1143-1144.)

The trial court found that the Agreement required Yeotis "to pay fees that she would not otherwise have to pay in a court of law." The language of the Agreement,

when read with the JAMS rules, arguably suggests that an employee may be required to pay half of all administrative and arbitrator fees, which may be $400 per day per party for the first three days of a hearing, and a lower rate thereafter.[6] In essence, Warner argues that the costs provision is not unconscionable because as applied, the Agreement will not result in the imposition of administrative and arbitration costs upon Yeotis. In so arguing, Warner stresses that the Agreement only requires the employee to pay for half of such costs "*to the extent it is required to do so by California law*," and that California law requires the employer to pay such fees and costs. (Italics added.) Warner's argument is not persuasive. "[T]he *risk* that a claimant may bear substantial costs of arbitration, *not just the actual imposition of those costs*, may discourage an employee from exercising the right to pursue any remedy against the employer." (*Carlson*, *supra*, 239 Cal.App.4th at pp. 636-637, italics added.) An employee cannot reasonably be expected to know the extent to which California law requires an employer to bear the costs of arbitration. Consequently, the costs provision produces an unacceptable chilling effect on the exercise of an employee's right to pursue a remedy. (*Ibid.*) We will direct the trial court to sever the costs provision from the Agreement.

### *Mutuality*

Yeotis contends that the Agreement is substantively unconscionable because it lacks mutuality in exempting certain claims which favor employers from arbitration. We conclude that any lack of mutuality is limited.

"'An arbitration agreement lacks "basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrences . . . ." [Citation.]' [¶] 'Courts have found one-sided

---

[6] The costs provision follows: "The Company will pay the administrative costs and arbitrator's fees associated with the arbitration to the extent it is required to do so by California law. Where not so required, however, the Company and I will share equally the expense of the administrative costs and arbitrator's fees associated with the arbitration." The Agreement states that arbitrations shall be conducted pursuant to the JAMS rules, which are identified in the Morris e-mail as the 2009 JAMS rules. Under those rules, each party may be required to pay $400 per day for the first three days of a hearing, and a lower rate thereafter.

employer-imposed arbitration provisions unconscionable where they provide that employee claims will be arbitrated, but the employer retains the right to file a lawsuit in court for claims it initiates, or where the types of claims likely to be brought by employees (wrongful termination, discrimination etc.) are the only ones made subject to arbitration. [Citation.]'" (*Carlson*, *supra*, 239 Cal.App.4th at p. 634.)

In arguing that the Agreement lacks mutuality, Yeotis refers to the following provision which exempts certain claims and proceedings from mandatory arbitration: "Notwithstanding the foregoing, however, the Company and I understand that this Agreement: (1) does not prohibit me from filing complaints with government agencies, . . . or administrative charges with the Equal Employment Opportunity Commission, the Department of Fair Employment and Housing . . . ; (2) does not apply to claims arising out of any benefit plan provided by the Company through a third-party contractual arrangement (such as medical benefits, life insurance, etc.); (3) *does not prohibit court proceedings to obtain injunctive or other provisional relief as permitted by applicable law, such as proceedings to obtain public injunctive relief pursuant to the Labor Code or the Unfair Business Practices Act or injunctive proceedings to prevent disclosure of trade secrets or other confidential information or to interpret or enforce the Confidentiality and Non-Solicitation Agreement I have signed in connection with my employment*; and (4) applies only to judicially cognizable claims (e.g., claims that could have been filed in a court of law) and not to resolution of internal Company or other disputes that could not otherwise be filed and maintained in a court of law." (Italics added.) (We hereafter refer to this provision as the "exemption clause.")

Provisions which permit judicial proceedings for injunctive relief (and thus exempt them from mandatory arbitration) are often deemed to favor employers, even where the exemption applies to employees as well as the employer. (*Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 397 ["it is far more likely that employers will invoke the court's equitable jurisdiction in order to stop employee competition or to protect intellectual property"]; *Carlson*, *supra*, 239 Cal.App.4th at p. 634.) In this case, however, to the extent that the exemption clause favors Warner, it is not overly one-

sided. Warner, the drafter of the exemption clause, clearly states that it applies only to requests for injunctive or other provisionary relief. Further, Warner admits that it must arbitrate claims based upon unfair competition and trade secret violations against former employees, and submit requests for enforcement of confidentiality and nonsolicitation agreements to an arbitrator. The exemption clause contributes a minimal degree to the substantive unconscionability of the Agreement, and we will direct the trial court to sever it from the Agreement.

*Award*

Warner argues that the trial court erred by finding that the Agreement was substantively unconscionable because it did not provide for "all types of relief that would otherwise be available in court" or specify "what types of awards may be had," and it was "silent as to the award that may be had under arbitration." We agree. The Agreement authorizes the arbitrator to award "all damages or other relief provided by California law." It requires a written decision or award, which states "the basis for the decision with sufficient specificity to allow meaningful, limited judicial review as may be permitted by law, and shall be final and binding."

*Arbitrator Selection and Discovery Procedures*

The trial court's ruling did not cite any deficiency in the arbitrator selection provisions, or the discovery provisions, of the Agreement. Yeotis nonetheless argues that those provisions are substantively unconscionable. We disagree.

Citing *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 178 (*Mercuro*), Yeotis argues the Agreement fails to provide for a truly neutral arbitrator. In *Mercuro*, the parties were limited to a pool of only eight individuals. Here, however, the arbitrator selection procedures in the Agreement and the JAMS rules are not restrictive or unreasonably limited. Absent a different agreement by the parties for arbitrator selection, JAMS rule 15 provides a strike and ranking process from a list of five potential arbitrators selected by JAMS. The parties, however, "may agree on any procedures not specified" in the JAMS rules that are "consistent with the applicable law." (JAMS rule 2.) The arbitrator must be a retired judge or a lawyer experienced in employment law

and licensed to practice in California. The rules do not prohibit the parties agreeing upon a non-JAMS arbitrator.

Yeotis also claims the Agreement's discovery provisions are unconscionable because they place her at a "significant disadvantage." She rests this claim on her perception that the JAMS rules conflict with the Agreement in limiting each party to one deposition, unless the arbitrator approves additional depositions. The record belies her claim. The Agreement states: "The parties shall be entitled to conduct discovery as though the proceeding had been brought in a court of law." JAMS rule 2 provides that the parties "may agree on any procedures not specified herein or in lieu of these Rules and JAMS policies" and the party-agreed procedures "shall be enforceable as if contained in these Rules." Because the procedures in the Agreement govern, and both parties have the right to conduct discovery as they would in a court proceeding, any discrepancies concerning discovery between the JAMS rules and the Agreement are insignificant.

*Evidentiary Claims*

Warner argues, as it did in the trial court, that certain statements in Yeotis's declaration are inadmissible because they are lacking in foundation. (Evid. Code, §§ 400, 403, subd. (a)(2).) We disagree. We review the trial court's rulings on the admissibility of evidence for abuse of discretion. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) We find none here. We will not further discuss the evidentiary claims, however, because we reverse the order denying the motion to compel arbitration, for reasons explained above.

*Severance*

Section 1670.5, subdivision (a) permits a court to refuse to enforce an unconscionable agreement, or sever an unconscionable clause in order to make the remainder of the agreement enforceable. (*Armendariz*, *supra*, 24 Cal.4th at pp. 121-122.) A court should refuse to enforce an agreement only when it is permeated by unconscionability. (*Id.* at p. 124.) "In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are

11

resolved in favor of arbitration.  [Citations.]"  (*Samaniego*, *supra*, 205 Cal.App.4th at p. 1144.)

The Agreement is procedurally unconscionable to a minimum degree, and substantively unconscionable to a moderate degree.  It is not, however, permeated by unconscionability.  The Agreement entitles the parties to conduct discovery as though the proceeding had been brought in a court of law and authorizes the arbitrator to award all damages or other relief provided by California law in a written decision, which must "state the basis for the decision with sufficient specificity to allow meaningful, limited judicial review as may be permitted by law."  The presence of deficient provisions in the Agreement does not ""''indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage."  [Citation.]'"  (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 986.)  Because the Agreement is not permeated by unconscionability, the trial court should have severed its unconscionable provisions and enforced the Agreement as modified.  Thus, we will reverse the order denying the motion to compel arbitration.

DISPOSITION

The judgment (order denying motion to compel arbitration) is reversed.  We direct the trial court to sever the exemption clause and the costs provision from the Agreement and grant the motion to compel arbitration pursuant to the modified Agreement.

Warner is awarded its costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.


12

Rebecca S. Riley, Judge

Superior Court of Ventura County

_____


Jackson Lewis, Ann Haley Fromholz, Sherry L. Swieca and Andranik Tsarukyan for Defendants and Appellants.

Weidman & Yun, Weidman & Farrar, Mark Weidman and Kim Farrar for Plaintiff and Respondent.