Filed 3/12/24  Monroy v. Donsuemor, Inc. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RIGOBERTO MONROY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DONSUEMOR, INC.,<br><br>        Defendant and Appellant. | A167487<br><br>(Alameda County<br>Super. Ct. No. 22CV011917) |

Rigoberto Monroy filed a lawsuit alleging individual and class claims against his former employer Donsuemor, Inc.  Donsuemor appeals from an order denying its motion to compel arbitration on the ground that the parties' arbitration agreement was unconscionable.  It contends the trial court erred by finding the agreement was adhesive, and even if it was adhesive, there was minimal procedural unconscionability, at most, so a high degree of substantive unconscionability was required to find the agreement unenforceable. Donsuemor urges there was no such high substantive unconscionability here, and the trial court should have severed one term if necessary and enforced the agreement.

We agree with the trial court that the agreement was both procedurally and substantively unconscionable.  We further conclude the trial court did not abuse its discretion by declining to sever the substantively unconscionable terms.

# BACKGROUND

## I.

### *The Parties and the Arbitration Agreement*[1]

Donsuemor is an industrial baking company.  Monroy worked for Donsuemor in Alameda, California for twenty years, from June 2000 until he was terminated in February 2020.  Donsuemor hired Monroy as a non-exempt employee on the production line.  In 2004, he became a shift manager on the swing shift.

The following year, a worker named Araceli Ramirez presented Monroy with a Spanish-language version of a document entitled "Mutual Agreement to Arbitrate Claims."  Ramirez told Monroy that if he failed to sign it, his employment would be terminated.  This was consistent with Monroy's general understanding throughout his employment with Donsuemor that he was required to sign all documents presented to him or be terminated.  No one explained the arbitration agreement to Monroy, who was not aware of what he was signing.  Ramirez was not part of the company's human resources department; she was a worker on the production line who reported to Monroy.  There was no opportunity for Monroy to negotiate the terms of the agreement or to inquire about it.

At the time Donsuemor presented him with the agreement, Monroy had been working at the company for nearly five years and had come to rely on

---

[1]  Because we apply substantial evidence review to the trial court's factual findings, we state the facts in the light most favorable to Monroy, who prevailed in the trial court, and to the extent there is any factual dispute, we " 'presume the court found every fact and drew every permissible inference necessary to support its judgment.' " (*Carlson v. Home Team Pest Defense, Inc.* (2014) 239 Cal.App.4th 619, 630.)

the benefits of his employment. The loss of his job would have "created major disruptions, including an abrupt income reduction."

## II.

### *The Proceedings Below*

In May 2022, Monroy sued Donsuemor in Alameda County Superior Court. He alleged that he experienced discriminatory and harassing treatment at work due to his disability and medical condition. In response to his complaints, Donsuemor terminated his employment. Monroy further alleged that Donsuemor committed wage and hour violations against him and a putative class of other employees. Based on these allegations, he asserted individual claims for retaliation (Lab. Code, §§ 1102.5, 6310; Gov. Code, § 12900, et seq.), wrongful termination in violation of public policy and disability discrimination (Gov. Code, § 12940, et seq.), as well as putative class claims for unlawful business practices (Bus. & Prof. Code, § 17200, et seq.) and Labor Code violations.

Donsuemor filed a motion to compel arbitration. It argued that the parties executed a valid agreement to arbitrate that encompassed Monroy's claims. Opposing the motion, Monroy argued that the agreement was procedurally and substantively unconscionable. He provided a declaration recounting the circumstances surrounding his execution of the agreement as described above. On reply, Donsuemor submitted a declaration by its Chief Executive Officer, who stated Donsuemor did not condition employment on signing the agreement. However, it admitted that it tried to encourage all employees to sign it and all but two percent of them did. Moreover, none of Donsuemor's declarations denied that Ramirez told Donsuemor he had to sign the agreement or he would lose his job.

3

In its written order, the trial court found the agreement was "procedurally unconscionable as a contract of adhesion." The court also found the agreement was substantively unconscionable due to its carve-out for injunctive relief most likely to be sought by Donsuemor and its provision entitling the party prevailing on a motion to compel arbitration (again most likely Donsuemor) to recover costs and attorney fees. The court stated it "would be inclined to strike" the latter provision, but "there remain[s] the other unconscionable provision" and the court did not find severance would further the interests of justice. Accordingly, the court "decline[d] to sever the unconscionable provisions" and denied Donsuemor's motion to compel arbitration.[2]

Donsuemor timely appealed.

## DISCUSSION

### I.

### *Governing Legal Principles*

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) Since there is no dispute the parties formed an arbitration agreement here, we focus on the defense Monroy raises to its enforcement—that the agreement is unconscionable.

Unconscionability has both a procedural and a substantive element. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*Kho*).) The procedural

---

[2] Donseumor filed separate motions to dismiss Monroy's class claims and to stay Monroy's individual claims pending arbitration. The court denied these motions as moot in light of its ruling on the motion to compel arbitration.

4

element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. (*Ibid.*) Substantive unconscionability pertains to the fairness of an agreement's terms and whether they are overly harsh or one-sided. (*Ibid.*) Both must be shown for the defense to be established, but they need not be present in the same degree. (*Ibid.*) Instead, they are evaluated on a sliding scale: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to find it unenforceable, while the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required. (*Id.* at pp. 125-126.) The ultimate issue in every case is whether the terms of the contract are so unfair, in view of all relevant circumstances, that a court should withhold enforcement. (*Id.* at p. 126.) "Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." (*Chen v. PayPal, Inc.* (2021) 61 Cal.App.5th 559, 579.)

As our colleagues in Division Three recently explained, "In assessing substantive unconscionability, we look to the terms of the parties' agreement to 'ensure[ ] that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided." ' [Citation.] These formulations 'all mean the same thing.' [Citation.] Substantive unconscionability ' "is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party.' " ' [Citation.] '[T]he paramount consideration in assessing [substantive] conscionability is mutuality.' [Citation.] 'Agreements to arbitrate must contain at least " 'a modicum of bilaterality' " to avoid unconscionability.' [Citation.]" (*Davis v.*

*Kozak* (2020) 53 Cal.App.5th 897, 910.) "In making this determination, courts often look to whether the agreement meets a minimum level of fairness based on the factors set forth in *Armendariz*." (*Ibid*.)

In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*), our high court adopted certain minimum requirements that must be met when an arbitration agreement impairs the exercise of unwaivable statutory rights enacted for a public purpose. (*Id.* at pp. 99-101 ["an arbitration agreement cannot be made to serve as a vehicle for the waiver of" such rights].) *Armendariz* imposed minimum requirements on "employer-mandated arbitration clauses covering claims by employees based on statutory and constitutional provisions," including the California Fair Employment and Housing Act (FEHA). (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 506 (*Boghos*).) "To ensure that employer-mandated arbitration agreements would not become vehicles for the waiver of FEHA rights," the *Armendariz* court held "such agreements are enforceable only if they provide for [1] neutral arbitrators, [2] more than minimal discovery, [3] a written award, and [4] all of the types of relief that would otherwise be available in court and, in addition, [5] ' "do[ ] not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." ' " (*Boghos*, at p. 506, italics omitted.)

On review of a decision granting or denying a motion to compel arbitration, "[W]e review the trial court's findings of disputed fact for substantial evidence; we review its finding of unconscionability based on those facts de novo." (*Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1047 (*Gostev*).) If material facts are in dispute, we presume the court found every fact and drew every permissible inference necessary to support

6

its judgment.  (*Carlson v. Home Team Pest Defense, Inc.*, *supra*, 239 Cal.App.4th at p. 630.)

## II.

### *Procedural Unconscionability*

" '[T]here are degrees of procedural unconscionability.  At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . .  Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum.  [Citation.]  Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises and "bear within them the clear danger of oppression and overreaching." ' . . .  [C]ourts must be 'particularly attuned' to this danger in the employment setting, where 'economic pressure exerted by employers on all but the most sought-after employees may be particularly acute.' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244 (*Baltazar*).)

Here, the trial court concluded the arbitration agreement was "a contract of adhesion," which it defined as "a standardized contract presented on a 'take it or leave it' basis with no opportunity to negotiate the terms and conditions."  This finding is supported by substantial evidence.  In his declaration, Monroy stated he was told his employment would be terminated if he did not sign the agreement, which was consistent with his general understanding of Donsuemor's practice regarding such documents.  The agreement was presented to Monroy by a production line worker at his workplace, who told him he had to sign it or he would lose his job.  There was no opportunity to negotiate.  This was a classic "take it or leave it" contract of adhesion.

But assuming a contract is one of adhesion, as "[a]rbitration contracts imposed as a condition of employment" "typically" are, the "pertinent question" then becomes "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." (*Kho, supra,* 8 Cal.5th at p. 126.) " 'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.' " (*Id.* at p. 127.) All those factors support a showing of significant oppression here.

Monroy was primarily a Spanish speaker and could not read English well, which we infer from the fact that the company provided him a Spanish-language version of the arbitration agreement. Even so, Monroy had a limited education, and the agreement was presented by a low-level employee who was not in a position to explain it to him. The company made no effort to explain what he was signing or its implications. He signed it without understanding it. The signed agreement was placed in his personnel file, and there is no indication he was given a copy. He had no prior experience with legal matters. Further, he was required to sign the agreement after he had been working for the company for almost five years on pain of losing a job he had come to rely on.

As our high court has observed, " '[t]he economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and

8

necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.' (*Armendariz*, *supra*, 24 Cal.4th at p. 115.) This economic pressure can also be substantial when employees are required to accept an arbitration agreement in order to *keep* their job. Employees who have worked in a job for a substantial length of time have likely come to rely on the benefits of employment. For many, the sudden loss of a job may create major disruptions, including abrupt income reduction and an unplanned reentry into the job market. In both prehiring and posthiring settings, courts must be 'particularly attuned' to the danger of oppression and overreaching." (*Kho*, *supra*, 8 Cal.5th at p. 127.) In *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 722 (*Fitz*), the court found "a high degree of oppressiveness" where an employee was given no opportunity to negotiate the terms of an arbitration policy made as a condition of continued employment. Division Three of this district reached the same conclusion in *Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 724.)

The circumstances in which Monroy signed the arbitration clause here were very similar to those in *Kho*, in which our Supreme Court concluded "the arbitration agreement's execution involved an 'extraordinarily high' degree of procedural unconscionability." (*Kho*, *supra*, 8 Cal.5th at p. 126; see also *id*. at pp. 127-128 [agreement presented in workspace; neither contents nor significance was explained; Kho was told he was required to sign agreement to keep the job he had held for three years; company selected low-level employee to present agreement, creating impression no request for explanation was expected and any request would be unavailing and negotiation efforts would be futile].)

Also as in *Kho*, the facts here support a finding of surprise. (See *Kho, supra,* 8 Cal.5th at p. 126 [surprise where unconscionable provision is hidden

9

within a prolix printed form].)  In *Kho*, the agreement was slightly more than a page long but written in an extremely small font.  (*Id*. at p. 128.)  The substance was "similarly opaque" with "sentences [that were] complex, filled with statutory references and legal jargon."  (*Ibid.*)

Here, the font was not extremely small, but the agreement was three single-spaced pages long, referred to many different California and federal codes and statutes.[3]  It contained significant legal jargon, such as "claims

---

[3]  For example, the first section of the agreement included a 12-line sentence listing the claims it covered, including "claims arising out of contract law, tort law, common law, wrongful discharge law, privacy rights, statutory protections, constitutional protections, wage and hour law, California Labor Code protections, the California Fair Employment and Housing Act (which includes claims for discrimination or harassment on the basis of age, race, color, ancestry, national origin, disability, medical condition, marital status, religious creed, sex, pregnancy, and sexual orientation), any similar state discrimination law, the California Family Rights Act, the federal Family and Medical Leave Act, the federal Civil Rights Act of 1964 and 1991, as amended, the Age Discrimination in Employment Act, the Older Workers' Benefit Protection Act, the Americans with Disabilities Act, claims for benefits (except where a benefit or pension plan specifies that its claims procedures shall culminate in an arbitration procedure different from this one) and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance."

The second section excluded injunctive relief claims, including those in which the employee is "exposed to certain confidential information owned, controlled, or in the care of Employer," exposure of which "[t]he parties acknowledge" "would cause irreparable harm to Employer and third parties (e.g., customers)."  The same section excluded from arbitration more broadly unspecified "situations where claims of either party may cause irreparable harm if such claims were subject to this Agreement."

Section three of the agreement states, in relevant part, that "[e]xcept as otherwise provided in paragraph one, arbitration shall be in accordance with the then current National Rules for Resolution of Employment Disputes of the American Arbitration Association (the 'Rules') before a single arbitrator who is selected in accordance with the Rules and who is licensed to practice law in California."  Those rules were neither provided nor attached.  It also

arising out of," "claims shall culminate in," "owned, controlled, or in the care of," "irreparable harm," "shall be in accordance with the then current [rules]," "void or voidable" and "advance all costs."

For a person with limited education, including one whose primary language is not English, it is difficult to imagine the specific terms and references of this arbitration agreement would be understandable. It may not be as impenetrable as the one in *Kho*, but for employees like Monroy and the production line workers Donsuemor hired, it was not designed to "promote[] understanding." (*Kho, supra,* 8 Cal.5th at p. 129.) In our view "[t]he document itself and the manner of its presentation did not promote

provides, "[t]he arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including, without limitation, any Claim that all or any part of this Agreement is void or voidable."

Section four states that if the employee alleges "a violation of public policy, or a violation of a statute relating to employment, including, without limitation, the California Fair Employment and Housing Act (or similar state statute), the 1964 and 1991 Civil Rights Act, 42 U.S.C. Section 2000e <u>et seq</u>., the Age Discrimination in Employment Act, or the Americans with Disabilities Act, Employer will advance all costs of the arbitration that would not be incurred by the parties if the dispute were litigated in court, including the fees of the arbitrator and any arbitration association administrative fees." The agreement does not define the term "advance all costs." Following that, it says "Except as set forth above, each party shall pay for its own costs, and attorneys' fees, if any. However, if any party prevails in a statutory Claim that affords the prevailing party attorneys' fees, the arbitrator may award reasonable attorney fees to the prevailing party in addition to any and all other remedies afforded by the relevant statute."

At the end of the document, in a paragraph without a heading, it states that "Arbitration as described above will be the exclusive forum for any Claims. Should the parties attempt to resolve a Claim by any method other than such arbitration, the prevailing party in any civil court motion to compel arbitration will be entitled to recover from the other party all costs and attorneys' fees incurred as a result of that motion to compel."

voluntary or informed agreement to its terms" by a workforce of laborers like Monroy. (*Ibid.*) For employers who have a workforce comprised primarily of relatively uneducated individuals, persons who do not read and understand English well, or both, even an agreement that might be comprehensible to an employee with a college education will not necessarily be so for less educated employees or non-native-English speaking employees. In these circumstances, the presumption of voluntariness and mutual assent that undergird policies encouraging arbitration may be unjustified and unjustifiable. (See *ibid*. [where employee is induced to sign arbitration agreement through " 'sharp practices' " and surprise, consent rationale for compelling arbitration "carries less force"].)

Based on the above, we conclude there was a high degree of procedural unconscionability in this case. Having so decided, we next turn to the parties' arguments about substantive unconscionability. Under the sliding scale approach, where there is a contract of adhesion but "no other indication of oppression or surprise, the degree of procedural unconscionability . . . is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796; see *Davis v. Kozak*, *supra*, 53 Cal.App.5th at p. 917; *Baltazar*, *supra*, 62 Cal.4th at p. 1245 [contracts that are merely adhesive are not subjected to same degree of scrutiny as contracts of adhesion that involve surprise or other sharp practices].) We must therefore determine whether there is any substantive unconscionability and, if so, whether the agreement is unenforceable with the high degree of procedural unconscionability in mind.

### III.

### *Substantive Terms*

Monroy claims the arbitration agreement is substantively unconscionable because: it (1) contains a wholesale waiver of claims under the Private Attorneys General Act ("PAGA," Lab. Code, § 2698 et seq.), (2) carves out claims for injunctive relief, (3) fails to exclude claims under the National Labor Relations Act ("NLRA," 29 U.S.C. § 151 et seq.) and claims for administrative remedies under California law, (4) requires employees to pay costs of arbitration, and (5) fails to comport with California fee-shifting statutes.[4]

#### A. *Armendariz* Requirements

Most of the issues Monroy raises pertain to whether the agreement provides adequate protection of unwaivable statutory rights under *Armendariz.* Monroy contends the arbitration agreement does not require the employer to pay all costs unique to arbitration, limits statutory remedies, and otherwise provides inadequate protection to his rights under several statutes. We address each of his arguments in turn.

---

[4] Monroy raised only a subset of these issues below, and the trial court based its finding of unconscionability on a smaller subset. While we could disregard Monroy's new arguments as waived, they raise legal questions determinable from uncontroverted facts and we thus exercise our discretion to consider them—at least insofar as they are adequately developed on appeal. (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275 & fn. 3.) Of course, "[w]e review the judgment, not the reasoning of the court below." (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 769.) Finally, Donsuemor notes that some of the issues raised by Monroy pertain to claims that are not included in his lawsuit. This is not material to our analysis. (*Subcontracting Concepts (CT), LLC v. De Melo* (2019) 34 Cal.App.5th 201, 212.)

### 1. *Costs Unique to Arbitration*

Section 4 of the agreement provides that if the employee "alleges a violation of public policy, or a violation of a statute relating to employment," including FEHA, "Employer will advance all costs of the arbitration that would not be incurred by the parties if the dispute were litigated in court, including the fees of the arbitrator and any arbitration association administrative fees." The section states further, that "[e]xcept as set forth above, each party shall pay for its own costs, and attorneys' fees, if any."

Monroy contends Section 4 is unconscionable for two reasons. First, he claims that by stating Donsuemor will "advance" costs unique to arbitration, the agreement requires the employee to repay these costs. The agreement is ambiguous on the point. The arbitration agreement says nothing about reimbursement or recovery of costs. If we found no substantive terms to be unconscionable, we would "[f]ollow[] the approach used by the Supreme Court in *Armendariz*" and interpret the provision to require that the employer must bear the arbitration forum costs. (*Farrar v. Direct Commerce, Inc.*, *supra*, 9 Cal.App.5th at p. 1276, citing *Armendariz, supra,* 24 Cal.4th at p. 113.)

Second, Monroy contends the list of claims for which Donsuemor must advance costs does not include all claims subject to arbitration, for example, claims for negligence and other torts. But the requirement that the employer bear costs unique to arbitration applies only to unwaivable rights "carefully tethered to statutory or constitutional provisions": our Supreme Court has not extended the *Armendariz* cost-shifting rule "to common law claims generally." (*Boghos, supra,* 36 Cal.4th at pp. 507-508.) Rather than violating *Armendariz*, the agreement complies with it by shifting  costs unique to arbitration to the employer where the employee "alleges a violation of public policy, or a violation of a statute relating to employment."

14

## 2. *PAGA Waiver*

Monroy contends that the agreement contains an unconscionable "wholesale waiver" of PAGA claims. The agreement, while requiring arbitration of all "claims arising out of . . . wage and hour law, [and] California Labor Code protections" requires PAGA claims to be arbitrated, does not purport to waive PAGA claims. Monroy urges that because the agreement covers and "fails to carve out" PAGA claims, it "necessarily includes a wholesale waiver." But Monroy cites no authority suggesting that an agreement to arbitrate a PAGA claim is akin to a wholesale waiver or is otherwise unconscionable. He relies on *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 647, which addressed an agreement "providing that in any arbitral proceeding, the parties could not bring any dispute as a . . . representative PAGA action." *Viking River* affirmed California law would invalidate such an agreement to the extent it "waiv[ed] *representative standing* to bring PAGA claims" in *either* "a judicial or arbitral forum": a "wholesale waiver of PAGA standing." (*Id.* at p. 649.) But far from declaring arbitration of a PAGA claim unconscionable, *Viking River* held an agreement to arbitrate individual PAGA claims is enforceable if the agreement is covered by the Federal Arbitration Act (FAA).[5] (*Viking River,* at p. 662; *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1119.) As this Division recently observed, *Viking River* "foreclose[s]" any argument that an agreement to arbitrate PAGA claims is substantively unconscionable. (*Barrera v. Apple American Group LLC*, *supra,* 95 Cal.App.5th at p. 89.)

---

[5] The FAA applies to contracts that involve interstate commerce and contracts that state that it applies. (*Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 76.) The parties do not contend that the FAA does or does not apply here, and we do not address the issue.

### 3. *Administrative Remedies*

Monroy contends that the agreement fails to exclude from arbitration claims under the NLRA and administrative claims for unpaid wages under the Labor Code (Lab. Code, § 98 et seq., known as the "Berman" statutes). Assuming this is true, under the authority raised by Monroy, "the fact that arbitration supplants an administrative hearing cannot be [the sole] basis for finding an arbitration agreement unconscionable." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1146 (*Sonic II*); *Kho, supra,* 8 Cal.5th at p. 130 [stressing that "the waiver of Berman procedures does not, in itself, render an arbitration agreement unconscionable"].) Rather, "the agreement must provide *in exchange* an accessible and affordable forum for resolving wage disputes." (*Kho,* at p. 133, citing *Sonic II.*) The trial court found the agreement here does so, and Monroy does not engage with its reasoning. His only argument concerning the accessibility and affordability of arbitration is the one about costs that we rejected above. Monroy does not otherwise develop his administrative remedies argument in any meaningful way, and we will not do so for him. (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 654.)

### 4. *Fee-Shifting*

Finally, Section 8 of the agreement provides that "[s]hould the parties attempt to resolve a Claim by any method other than . . . arbitration, the prevailing party in any civil court motion to compel arbitration will be entitled to recover from the other party all costs and attorneys' fees incurred as a result of that motion to compel."

Divisions Four and Seven of the Second District have held that such provisions violate an employee's rights under FEHA, which provides that "a prevailing defendant shall not be awarded fees and costs unless the court

16

finds the action was frivolous, unreasonable, or groundless . . . ." (Gov. Code, § 12965, subd. (c)(6)). (*Patterson v. Superior Court* (2021) 70 Cal.App.5th 473, 489-490 [interpreting the provision to incorporate the FEHA standard]; *Ramirez v. Charter Communications, Inc.* (2022) 75 Cal.App.5th 365, 378, 382 (*Ramirez*), review granted, June 1, 2022, S273802 [disagreeing with *Patterson* that such a provision "can be saved by impliedly incorporating the FEHA . . . standard into its unambiguous language"]; see also *Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035, 1057-1058.) The trial court agreed, and so do we.

Donsuemor urges that the agreement in *Ramirez* contained other unenforceable provisions but does not otherwise disagree that this provision runs afoul of FEHA. Since this is a violation of *Armendariz*'s "minimum requirements" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076), the provision is unconscionable.

### B. Injunctive Relief Carve-Out

That brings us to the last substantive issue raised by Monroy: the agreement's carve-out for injunctive relief, which he claims is unconscionably one-sided. Mutuality is the paramount consideration in assessing substantive conscionability. (*Gostev, supra*, 88 Cal.App.5th at p. 1056.) Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability. (*Ibid.*) "This does not mean that parties may not choose to exclude particular types of claims from . . . arbitration." (*Fitz, supra,* 118 Cal.App.4th at p. 723.) And a degree of one-sidedness may be appropriate when supported by "some reasonable justification . . . based on 'business realities.' " (*Armendariz, supra*, 24 Cal.4th at p. 117.) However, an adhesive agreement " 'lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the

17

same transaction or occurrence or series of transactions or occurrences.' " (*Fitz,* at p. 723, quoting *Armendariz,* at p. 120.)  Agreements that "compel arbitration of employee-initiated claims while exempting from arbitration employer-initiated claims" are unconscionable.  (*Baltazar, supra*, 62 Cal.4th at p. 1248, fn. 4.)

Here, the parties "mutually agree[d]" to arbitrate "all claims or controversies arising out of Employee's employment or its termination . . . that either party may have against the other . . . ."  Theoretically, "either party is entitled to seek and obtain temporary injunctive relief (and subsequent preliminary/permanent injunctive relief) from a court . . . ."  The trial court found this carve-out lacked mutuality.  Acknowledging that the agreement allows either party to seek injunctive relief in court, the trial court reasoned that "the employer is the party most likely to bring such claims."  It referred to the agreement's discussion of employer claims arising from exposure of confidential information as the only specific example of circumstances justifying the carve-out.

The provision is one-sided in that the claims exempt from arbitration most likely to be brought are claims by the employer, such as trade secret and intellectual property claims as well as unfair competition claims.  While it is not inconceivable that an employee might assert a claim for injunctive relief, as a practical matter such claims seem unlikely at best.  Nonetheless, our high court has held such a provision is not "unfairly one-sided merely because one side is, as a practical matter, more likely to make use of it." (*Baltazar*, *supra*, 62 Cal.4th at p. 1248 & fn. 4.)  In this case, however, the provision is one-sided in another respect:  it states that the parties acknowledge the "irreparable harm" of any exposure of the employer's confidential information, thus relieving the employer from proving that

18

essential element of a claim for injunctive relief. No such relief from proving that or any other essential element of an injunctive relief claim is provided to the employee.

Arbitration agreements that exempt claims for injunctive relief more likely to be brought by the employer have been held unconscionable where there were additional unconscionable terms or a high degree of procedural unconscionability. For example, in *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 175-179, the agreement reflected a high degree of procedural unconscionability and the court of appeal held that "given the [resulting] low threshold of substantive unconscionability," an exclusion of claims for injunctive or other equitable relief for certain claims most likely to be asserted by the employer, "together with the disadvantages to the employee in using" a particular arbitration provider, rendered the agreement unconscionable. (See also *Fitz, supra,* 118 Cal.App.4th at pp. 709, 719 [agreement carved out all "disputes over confidentiality/non-compete agreements or intellectual property rights" and failed to provide for adequate discovery in arbitration]; *Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138, 1147-1148 [agreement exempting "claims typically brought by employers—namely, those seeking declaratory and preliminary injunctive relief to protect . . . proprietary information and non-competition/non-solicitation provisions" unconscionable when considered together with "multiple [additional] one-sided provisions."]

Given the high degree of procedural unconscionability here, the carve-out for injunctive relief with the provision effectively stipulating to irreparable harm where the employer seeks injunctive relief regarding confidential information establishes a low degree of substantive unconscionability. That, together with the unconscionable fee-shifting clause

19

for motions to compel arbitration and high degree of procedural unconscionability in this case renders the agreement unenforceable absent severance of the unconscionable terms. We next turn to the issue of severance.

## IV.

### *Severance*

Where a court finds a contract or any of its provisions unconscionable, it "may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) We review the trial court's refusal to sever unconscionable terms for abuse of discretion. (*Gostev, supra,* 88 Cal.App.5th at p. 1062.)

In *Armendariz*, the court described the basic principles of severance in this context, explaining that courts must "look to the various purposes of the contract." (*Armendariz, supra,* 24 Cal.4th at p. 124.) "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." (*Ibid.*) "If the illegality is collateral to the main purpose of the contract," and the illegal provision can be severed or restricted, severance or restriction is appropriate. (*Ibid.*) The overarching inquiry is whether the interests of justice would be furthered by severance. (*Ibid.*) The fact that an "arbitration agreement contains more than one unlawful provision" may "indicate a systematic effort to impose arbitration on an employee . . . as an inferior forum that works to the employer's advantage" and may justify a conclusion "that the arbitration agreement is permeated by an unlawful purpose." (*Ibid.*) And if "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement," as

20

with an agreement that lacks mutuality, the court would have to "reform the contract, not through severance or restriction, but by augmenting it with additional terms," which would exceed its power to cure a contract's illegality. (*Id.* at pp. 124-125.) On the other hand, where "[t]here is only a single provision that is unconscionable" and "no contract reformation is required" since "the offending provision can be severed," courts will sever the provision. (*Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at p. 1075.)

Here, the two substantively unconscionable provisions render arbitration "an inferior forum." (*Armendariz, supra,* 24 Cal.4th at p. 124.) The provision governing fee and cost awards upon a motion to compel arbitration, while clearly intended to discourage employees from challenging the agreement in court and contrary to FEHA, could nonetheless have been severed. (*Ibid.*) Indeed, the trial court stated it would be inclined to sever it, were it not for the carve-out for injunctive relief. However, because it also found the injunctive relief provision unconscionable, the trial court declined to sever these two, unfairly one-sided provisions. The question is not whether we would have declined to sever those provisions but whether the trial court's decision not to sever them was an abuse of discretion.

In its reply brief, Donsuemor argues in conclusory fashion that even if both the fee-shifting provision and injunctive relief carve-out provision are unconscionable, the trial court abused its discretion in declining to sever them. The argument fails to persuade. It is conclusory and based on a premise we have rejected that the level of procedural unconscionability is low. Further, Donsuemor cites *Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816 (*Lhotka*) without explaining how that case aids its position. As we see it, *Lhotka,* a decision by Division Three of this district, supports the opposite conclusion.

21

In *Lhotka*, Justice Siggins explained, "Civil Code section 1670.5, subdivision (a) gives the trial court discretion to either refuse to enforce a contract it finds to be unconscionable, or to strike the unconscionable provision and enforce the remainder of the contract. It provides: 'If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.' The trial court has discretion under this statute to refuse to enforce an entire agreement if the agreement is 'permeated' by unconscionability. (*Armendariz, supra,* 24 Cal.4th at p. 122; *Murphy v. Check 'N Go of California, Inc.* [2007] 156 Cal.App.4th [138,] 149.) An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision. . . . Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage.' (*Armendariz, supra,* at p. 124; *Murphy, supra,* at p. 148.) 'The overarching inquiry is whether " 'the interests of justice . . . would be furthered' " by severance.' (*Armendariz, supra,* at p. 124.)" (*Lhotka,* 181 Cal.App.4th at p. 826.) In *Lhotka,* the court affirmed the trial judge's decision not to sever as "within the court's discretion." (*Ibid.*)

The trial court here declined to sever the unconstitutional provisions, observing, "As plaintiff argues, the agreement contains no severability clause; however, the court has statutory authority to sever unconscionable provisions under Civil Code § 1670.5, subd. (a). [¶] As noted above, the court would be inclined to strike the provision awarding fees for prevailing on a motion to

compel arbitration.  However, there remain[s] the other unconstitutional provision and the court does not find that severance would further the interests of justice.  (*Armendariz, supra,* 24 Cal.4th at p. 124.)  Thus, the court declines to sever the unconscionable provisions."

The trial court was aware of its discretion and of the high court's admonition that, in deciding whether to sever, "the overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance."  In short, Donsuemor has not persuaded us that the trial court abused its discretion.

## DISPOSITION

The order denying Donsuemor's motion to compel arbitration is affirmed.  Monroy shall recover his costs on appeal.

_____
STEWART, P.J.

We concur.

_____
RICHMAN, J.

_____
MILLER, J.

*Monroy v. Donsuemor, Inc.* (A167487)