Filed 4/7/26; Certified for Publication 4/22/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| J. ASENCION SANTANA, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STUDEBAKER HEALTH CARE CENTER, LLC, <br><br> Defendant and Appellant. | B343640 <br><br> (Los Angeles County Super. Ct. No. 24STCV12865) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura A. Seigle, Judge.  Reversed with directions.

Eisenberg & Associates, Michael B. Eisenberg, Bryan W. Edgar; Joseph S. Socher for Defendant and Appellant.

The Sentinel Firm, Seung Yang, Tiffany Hyun, Jeffrey Jackson, Christine Noh; Work Lawyers, Justin Lo and Jarrod Nakano for Plaintiff and Respondent.

# INTRODUCTION

When Studebaker Health Care Center, Inc. hired J. Asencion Santana, Studebaker required him to sign a series of documents. In three of the documents Studebaker and Santana agreed to arbitrate most disputes arising out of their employment relationship, except for non-individual claims brought as a private attorney general under the Labor Code Private Attorney General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.). After his employment ended Santana filed a wage-and-hour class action against Studebaker, which included a cause of action under PAGA. Studebaker filed a motion to compel arbitration, and the trial court denied it.

Studebaker appeals from the order denying its motion to compel arbitration, arguing the trial court erred in ruling that, because of various "conflicts" among the three arbitration-related documents, there was no valid agreement to arbitrate. Studebaker also argues the trial court erred in ruling in the alternative the agreement to arbitrate was unconscionable and unenforceable.

We agree with Studebaker on both counts. Though the agreement to arbitrate contains a few ambiguities, those ambiguities do not undermine the parties' clear agreement to arbitrate employment-related disputes. And though the agreement to arbitrate reflects some procedural unconscionability—as contracts of adhesion generally do—the agreement does not contain any substantively unconscionable terms and is not unenforceable. Therefore, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Santana Applies To Work for Studebaker and Signs Several Arbitration-related Documents*

Santana began working at a skilled nursing facility in December 2020.  Studebaker purchased the facility in January 2023 and became Santana's employer.  As part of its onboarding process,[1] Studebaker asked Santana to sign three arbitration-related agreements (collectively, the agreement to arbitrate).[2]  He did.

The first document, titled "California Mutual Dispute Resolution Agreement" (California ADR agreement), included a mutual agreement to resolve disputes through binding arbitration.  The California ADR agreement stated, in relevant part:  "This Agreement applies to claims Employee may bring against the Company for wrongful termination, discrimination, harassment, retaliation, breach of contract, and wage and hour violations, whether directly or indirectly, and torts such as invasion of privacy, assault and battery, or defamation.  This Agreement also applies to claims that the Company might bring

---

[1]    "Onboarding" has emerged from the murky reservoir of corporate jargon and has "mainstreamed" to more general usage.  It is "defined as 'the act or process of orienting and training a new employee.'"  (*Garcia v. Expert Staffing West* (2021) 73 Cal.App.5th 408, 413, fn. 4.)

[2]    Because Santana signed the three documents at the same time and they relate to the same matter, we construe them together.  (See Civ. Code, § 1642; *Silva v. Cross Country Healthcare, Inc.* (2025) 111 Cal.App.5th 1311, 1322-1323; *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 490-491.)

3

against Employee such as, for example, theft of money or trade secrets, breach of a confidentiality Agreement, or breach of a contract."

The second document, titled "Alternative Dispute Resolution Policy" (ADR policy), also included a mutual agreement to submit all employment disputes to binding arbitration. The ADR policy covered "any dispute arising out of or related to your employment, the terms and conditions of your employment and/or the termination of your employment . . . ." Such claims included "[a]lleged violations of federal, state and/or local constitutions, statutes or regulations"; "[c]laims based on any purported breach of contract (including breach of the covenant of good faith and fair dealing, claims of wrongful termination or constructive termination)"; "[c]laims alleging failure to compensate for all hours worked, failure to pay overtime, failure to pay minimum wage, failure to reimburse expenses, failure to pay wages upon termination, failure to provide accurate, itemized wage statements, failure to provide meal and/or rest breaks, entitlement to waiting time penalties and/or other claims involving employee wages, including, but not limited to, claims brought under the Fair Labor Standards Act and any other statutory scheme related to wages or working hours"; and "[a]ny claim the Company may enjoy against employees, regardless of the nature, arising from the employment relationship."

The third document, titled "Agreement to Be Bound by Alternative Dispute Resolution Policy" (ADR agreement), also included a mutual agreement to resolve disputes solely through binding arbitration. The ADR agreement stated: "This ADR Policy is understood to apply to all disputes relating to my

4

employment, the terms and conditions of my employment, including but not limited to my compensation, wages, claims alleging failure to compensate for all hours worked, failure to pay overtime, failure to pay minimum wage, failure to reimburse expenses, failure to pay wages upon termination, failure to provide accurate, itemized wage statements, failure to provide meal and/or rest breaks, entitlement to waiting time penalties and/or other claims involving employee wages, benefits, discipline, performance evaluations, promotions, transfers, and the termination of my employment, as defined in the ADR Policy materials." Studebaker agreed "to be bound by the company's ADR program and have any and all claims arising out of the employment relationship it may enjoy against [Santana] resolved" through binding arbitration. (Capitalization omitted.) The ADR agreement also stated "final and binding arbitration, is the exclusive means for resolving covered disputes; no other action may be brought in court or in any other forum." (Capitalization omitted.) Each of the three documents also included a waiver of the right to participate in class or collective actions (except representative actions under PAGA).

Santana also signed a confidentiality agreement. This document prohibited him from disclosing confidential information or trade secrets he acquired during his employment and from soliciting Studebaker's customers and employees for three years following his employment termination.

B. *Santana Sues Studebaker*

Santana worked for Studebaker for approximately one year. After leaving his employment Santana filed a wage-and-hour class action suit against Studebaker in May 2024. He

alleged causes of action based on violations of the Labor Code: failure to pay minimum wage; failure to pay overtime compensation; failure to provide meal periods; failure to provide rest periods; failure to indemnify for necessary expenditures; failure to provide accurate itemized wage statements; failure to pay wages at the time of discharge from employment; and a cause of action under PAGA. Santana also alleged a cause of action under Business and Professions Code section 17200 et seq. for unfair business practices.

C. *Studebaker Files a Motion To Compel Arbitration, and the Trial Court Denies It*

Studebaker filed a motion to compel arbitration of Santana's individual claims, including his individual PAGA claim, and to enforce the class action waiver. Studebaker argued that, because the agreement to arbitrate included enforceable class action waivers, the court should dismiss most of Santana's class-based wage-and-hour claims. Regarding the causes of action based on Labor Code violations Santana suffered individually, Studebaker argued those causes of action fell within the scope of the agreement to arbitrate. And regarding Santana's PAGA claim, Studebaker argued that, because the Federal Arbitration Act (FAA) governed the agreement to arbitrate, the court should compel arbitration of Santana's individual PAGA claim and stay his non-individual PAGA claim pending the arbitration.

In opposition to the motion to compel arbitration, Santana argued that, because the California ADR agreement, the ADR policy, and the ADR agreement contained conflicting and ambiguous terms, there was no enforceable arbitration

6

agreement. Santana also argued that, because the agreement to arbitrate included an unenforceable waiver of the right to bring a PAGA action, the agreement to arbitrate was unconscionable. Finally, Santana argued the agreement to arbitrate, when construed with the confidentiality agreement, was unconscionable because it was unfairly one-sided and lacked mutuality.

The trial court denied the motion to compel arbitration on two grounds. First, the court ruled there was no enforceable agreement to arbitrate. Citing what it described as conflicts among the terms of the California ADR agreement, the ADR policy, the ADR agreement, the employee handbook, the confidentiality agreement, the process to select an arbitrator, and the right to bring a PAGA action, the court ruled "[t]hese many inconsistencies make determining the terms of [Santana's] employment impossible and show a lack of mutual assent to material contract terms."

Second, the trial court ruled that, even if there was a valid agreement to arbitrate, the agreement was unconscionable. The court ruled the agreement to arbitrate had a high degree of procedural unconscionability due to the unequal bargaining positions of the parties and the agreement's conflicting terms. The court also ruled that a provision in the ADR agreement waiving the right to bring a PAGA cause of action was substantively unconscionable and that, because (in the trial court's view) the FAA did not apply, the court could not salvage the agreement to arbitrate by splitting Santana's PAGA cause of action into arbitrable individual and non-arbitrable non-individual claims. The court further ruled the confidentiality agreement contained two substantively unconscionable

7

provisions—one reducing the quantum of proof required for Studebaker to obtain an injunction and the other allowing Studebaker to litigate its claims against Santana in court. Finally, the court ruled that, due to the myriad conflicts in the agreement to arbitrate and the confidentiality agreement, the court could not sever the unconscionable provisions to save the agreement to arbitrate. Studebaker timely appealed.

## DISCUSSION

"Federal and California law treat valid arbitration agreements like any other contract and favor their enforcement." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492; see *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125; see also 9 U.S.C. § 2; Code Civ. Proc., § 1280 et seq.) A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, "save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) This appeal involves two such grounds: lack of mutual assent and unconscionability.

A.   *The Parties Agreed To Arbitrate Employment-related Disputes*

1.   *Applicable Law and Standard of Review*

Because arbitration is a contractual right, the threshold question in every motion or petition to compel arbitration is whether an agreement to arbitrate exists. (See Code Civ. Proc., § 1281.2 [court must order arbitration of a controversy "if it determines that an agreement to arbitrate the controversy exists"]; *Coinbase, Inc. v. Suski* (2024) 602 U.S. 143, 145

8

["Arbitration is a matter of contract and consent, and . . . disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes."]; *Fuentes v. Empire Nissan, Inc.* (2026) 19 Cal.5th 93, 109 (*Fuentes*) ["Arbitration """"is strictly a matter of consent"""—absent an agreement to arbitrate, *the default rule is that parties may litigate breach of contract claims in court.*"]; *Mar v. Perkins* (2024) 102 Cal.App.5th 201, 211 ["the threshold question is whether there is an agreement to arbitrate"]; *Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 601 ["a 'threshold question[ ] presented by every motion or petition to compel arbitration' is 'whether the parties' dispute falls within the scope of that agreement'"].) "In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.'" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; accord, *Enmark v. KF Community Care, LLC* (2024) 105 Cal.App.5th 463, 471; see *Mondragon*, at p. 602 [""An arbitration agreement is subject to the same rules of construction as any other contract.""].)

Under California law the basic requirements for an enforceable contract are (1) parties capable of contracting, (2) the consent of those parties, (3) a lawful object, and (4) adequate consideration. (Civ. Code, § 1550; see *J.B.B. Investment Partners Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 9.) The consent of the parties to a contract must be free, mutual, and communicated by each to the other. (Civ. Code, §§ 1565, 1581.) The absence of mutual consent, i.e., the failure to reach a meeting of the minds on all material points, prevents the formation of a contract, including an agreement to arbitrate. (*Cheema v. L.S. Trucking, Inc.* (2019) 39 Cal.App.5th 1142, 1149; see *Banner Entertainment,*

9

*Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 358-359 ["California law is clear that there is no contract until there has been a meeting of the minds on *all* material points"].) "'Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable. [Citations.] "Although the terms of a contract need not be stated in the minutest detail, it . . . must evidence a meeting of the minds upon the essential features of the agreement."'" (*Cheema*, at p. 1149.) Whether a term is material or essential "'depends on its relative importance to the parties and whether its absence would make enforcing the remainder of the contract unfair to either party.'" (*Eagle Fire & Water Restoration, Inc. v. City of Dinuba* (2024) 102 Cal.App.5th 448, 468; see *Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1256, fn. 3; see also *Westlands Water Dist. v. All Persons Interested* (2023) 95 Cal.App.5th 98, 127 ["'material'" and "'essential'" are interchangeable].)

In determining whether there is mutual consent, the court will often consider extrinsic evidence and resolve a question of fact. (*Eagle Fire & Water Restoration, Inc. v. City of Dinuba*, *supra*, 102 Cal.App.5th at p. 468; *Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 966.) But where, as here, the facts are not in dispute, whether there is mutual consent is a question of law, and we review the court's ruling de novo. (See *Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227 ["'"[i]nterpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning"'"]; *Avery v.*

10

*Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60 [same].)

> 2. *The Trial Court Erred in Ruling There Was No Valid Agreement To Arbitrate*

The trial court ruled there was no agreement between the parties to arbitrate their employment disputes. The court ruled that, "because of conflicting terms among the various contracts and documents [Santana] signed when he onboarded, there is [an] absence of mutual assent." The court erred in failing to apply well-settled principles of contract interpretation.

"'The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting.'" (*Pacho Limited Partnership v. Eureka Energy Co.* (2025) 115 Cal.App.5th 598, 611; see *Mondragon v. Sunrun Inc.*, *supra*, 101 Cal.App.5th at p. 615.) Generally, courts must construe an apparent agreement between the parties to make it "lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643; see *Ramirez v. Charter Communications, Inc.*, *supra*, 16 Cal.5th at p. 507 ["Where a contract is susceptible to two interpretations, one which renders it valid and the other which renders it void, a court should select the interpretation that makes the contract valid."].) Though conflicting or ambiguous terms may render an agreement so uncertain it is unenforceable, that is not usually the case. "[F]or purposes of contract law, certainty is not the same as unambiguous. The test for whether a term is ambiguous is whether it is reasonably susceptible to more than one interpretation. [Citation.] An ambiguity in an agreement is resolved through interpretation

11

and the resulting meaning enforced.  [Citation.]  In short, ambiguous agreements are enforceable and uncertain agreements are not." (*Eagle Fire & Water Restoration, Inc. v. City of Dinuba, supra*, 102 Cal.App.5th at p. 469.)

The trial court ruled the agreement to arbitrate contained conflicting terms in three areas: whether the FAA applied, how to select an arbitrator, and whether the parties agreed to arbitrate PAGA claims.  None of these purported conflicts, however, made the agreement to arbitrate so uncertain it negated the parties' agreement to arbitrate.

First, and contrary to the court's ruling, the agreement to arbitrate plainly and unambiguously provides the FAA applies. The California ADR agreement states:  "Any arbitration proceeding under this Agreement shall proceed under and be governed by the Federal Arbitration Act . . . because Employee and the Company[ ] are engaged in interstate commerce.  The procedures of the California Arbitration Act . . . shall also apply, to the extent they are not contrary to the FAA."  The California ADR also states:  "Following the issuance of the arbitrator's decision, any party may petition a court to confirm, enforce, correct, or vacate the arbitrator's opinion and award under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, if applicable, and/or applicable state law."  The ADR agreement similarly states:  "The parties acknowledge that this Agreement evidences a transaction involving interstate commerce.  Notwithstanding the provision in the preceding paragraph with respect to applicable substantive law, any arbitration conducted pursuant to the terms of this Agreement shall be governed by the Federal Arbitration Act . . . ." And though the ADR policy does not state the FAA applies, it (like the California ADR agreement) does state:  "Following the

12

issuance of the arbitrator's decision, any party may petition a court to confirm, enforce, correct, or vacate the arbitrator's opinion and award under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, if applicable, and/or applicable state law." These contractual provisions—while they are not identical—do not conflict. Santana does not even argue they do.

Second, though the California ADR agreement and the ADR policy include different provisions regarding the selection of an ADR provider, those differences do not render the agreement to arbitrate so vague or uncertain it is unenforceable. Both the California ADR agreement and the ADR policy provide the parties should attempt to agree on an arbitrator.[3] They differ only on what happens if the parties cannot agree. In that event, the California ADR agreement states the parties "will select an alternative dispute resolution provider," while the ADR policy states "a list of arbitrators will be obtained from the American Arbitration Association's ('AAA') Employment Panel." Though these provisions are different, they both assume the parties have agreed to arbitrate. Parties to a binding and enforceable arbitration agreement routinely have disputes over how to select an arbitrator, and courts routinely resolve those disputes.

The California ADR agreement and the ADR policy also provide different procedures for selecting an arbitrator. The

---

[3] The California ADR agreement states: "At the beginning of the arbitration process under this Agreement, Employee and the Company will need to select an arbitrator by mutual agreement. Such an arbitrator shall be a retired California Superior Court Judge, or another qualified and impartial person that Employee and the Company decide upon." The ADR policy provides: "The arbitrator will be mutually selected by the Company and the Employee."

13

California ADR agreement states the parties will "request from [the ADR] provider a list of an odd number of potential arbitrators. From that list Employee and the Company will alternatively strike arbitrators, with the Company going first, until one arbitrator is left. That arbitrator shall be the arbitrator who will hear the case." The ADR policy states: "The arbitrator will be selected by the parties according to the method of selection specified by the AAA in its Employment Arbitration Rules and Mediation Procedures." Assuming these two procedures conflict—a matter not resolved by the evidence in the record—the contractual provisions create a potential ambiguity regarding the arbitrator selection process, not an uncertainty about whether the parties agreed to arbitrate their employment-related disputes. Indeed, because the provisions regarding the selection of an arbitrator presuppose the parties have agreed to arbitration, the provisions reinforce (rather than undermine) the parties' mutual intent to arbitrate (rather than litigate) their disputes.

In any event, where (as here) the parties' intent to arbitrate their disputes is clear, "[t]he presence of options regarding the method for selecting an arbitrator or the location of the arbitration hearing does not negate that clear intention." (*HM DG, Inc. v. Amini* (2013) 219 Cal.App.4th 1100, 1109.) The court in *HM DG* rejected the argument that, because the arbitration agreement included options for selecting an arbitrator and location, there was "'no meeting of the minds'" or mutual consent to arbitrate. (*Id.* at pp. 1108-1109.) The court held that, because the arbitration clause evidenced the parties' intent to submit their disputes to binding arbitration, the lack of a specified forum or set of rules did not invalidate the agreement to

14

arbitrate. The parties could choose to agree on a forum, the applicable rules, and an arbitrator, or have the court decide those issues for them. (*Id.* at pp. 1110-1111.) And if the parties could not agree, Code of Civil Procedure section 1281.6 "provides a solution to ensure a party's contractual right to arbitrate is enforced" by allowing the court to appoint the arbitrator. (*HM DG, Inc.,* at p. 1108.) The same is true here. Any ambiguity about the arbitrator selection process—which will be relevant only if the parties cannot agree on an arbitrator or a selection process, and which the court can resolve in that event—does not undermine the parties' unmistakable intent to arbitrate employment-related disputes.

Third, and again contrary to the court's ruling, the agreement to arbitrate reflects the parties' intent to arbitrate Santana's individual PAGA and other Labor Code claims. State law "prohibit[s] wholesale waiver of PAGA claims." (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1114; see *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383 ["an employee's right to bring a PAGA action is unwaivable"], overruled in part in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*).) In *Iskanian* the Supreme Court explained that allowing the plaintiff to waive his or her right to bring a PAGA action "serves to disable one of the primary mechanisms for enforcing the Labor Code. Because such an agreement has as its 'object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law,' it is against public policy and may not be enforced." (*Iskanian*, at p. 383; accord, *Villalobos v. Maersk, Inc.* (2025) 114 Cal.App.5th 1170, 1195-1196.) While a state law rule "may not be enforced if it is preempted by the FAA," the Supreme Court in *Iskanian* held

15

the rule against PAGA waivers did not frustrate the FAA's objectives because "a PAGA action is a dispute between an employer and the state Agency." (*Iskanian,* at p. 384.)

In *Viking River*, *supra*, 596 U.S. 639, decided before Santana began working for Studebaker, the United States Supreme Court held the FAA preempted *Iskanian* in part. In *Adolph v. Uber Technologies, Inc.*, *supra*, 14 Cal.5th 1104 the California Supreme Court explained the effect of *Viking River*. *Viking River* "left undisturbed" *Iskanian*'s holding "that a predispute categorical waiver of the right to bring a PAGA action is unenforceable." (*Adolph*, at p. 1117; accord, *Villalobos v. Maersk, Inc.*, *supra*, 114 Cal.App.5th at pp. 1195-1196.) "In addition, *Iskanian* held unenforceable an agreement that, while providing for arbitration of alleged Labor Code violations sustained by the plaintiff employee (what *Viking River* called individual claims), compels waiver of claims on behalf of other employees (i.e., non-individual claims). [Citations.] . . . *Viking River* also left this rule intact." (*Adolph*, at pp. 1117-1118; accord, *Villalobos*, at p. 1196.) However, the California Supreme Court explained, *Viking River* "held that 'the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.'" (*Adolph*, at p. 1118; accord, *Villalobos*, at p. 1196.) "Thus, *Viking River* requires enforcement of agreements to arbitrate a PAGA plaintiff's individual claims if the agreement is covered by the FAA." (*Adolph*, at p. 1119; accord, *Villalobos*, at p. 1196.)

Because (as discussed) the FAA applies to the agreement to arbitrate, class and collective action waivers in which Santana agreed to arbitrate his individual Labor Code violation claims,

including his individual PAGA claim, are enforceable under *Adolph* and *Viking River*, so long as they do not include a waiver of the right to bring non-individual PAGA claims.  Each of the three documents comprising the agreement to arbitrate includes a valid PAGA waiver.  The California ADR agreement includes a class and collective action waiver requiring the parties to bring their claims in their individual capacities[4] and carves out what *Viking River* called non-individual PAGA claims:  "If under applicable law a claim, for example, without limitation, a representative claim under [PAGA] is found to be unwaivable and such action is pursued in court, Employee [and] the Company agree[ ] that any such claim, including a PAGA claim, will be severed and stayed pending resolution of claims that are arbitrable, including without limitation, Employee's individual claims."  The ADR policy states:  "You understand and agree this ADR Program prohibits you from joining or participating in a class action or representative action, acting as a representative of others, excluding private attorney general claims, or otherwise consolidating a covered claim with the claim[s] of others."  The ADR agreement includes a nearly identical provision:  "I agree this ADR Program prohibits me from joining or participating in a class action or representative action, acting as a representative of others, excluding private attorney general claims, or otherwise consolidating a covered claim with the claims of others."

---

[4]    It states, for example:  "All claims brought under this Agreement shall be brought in the individual capacity of Employee or Company.  Under no circumstances shall this Agreement be construed to allow or permit claims or controversies to proceed as a class or collective action or other similar basis."

17

As the trial court found, however, there is one provision in the ADR agreement that conflicts with these provisions: "I UNDERSTAND I AM PROHIBITED FROM JOINING OR PARTICIPATING IN A CLASS ACTION OR REPRESENTATIVE ACTION, ACTING AS A PRIVATE ATTORNEY GENERAL OR REPRESENTATIVE OF OTHERS, OR OTHERWISE CONSOLIDATING A COVERED CLAIM WITH THE CLAIM OF OTHERS." This wholesale waiver of the right to bring a PAGA action is inconsistent with the language of the three class and collective action waivers that excluded non-individual PAGA claims and with the provisions in the California ADR agreement, the ADR policy, and the ADR agreement stating the parties did not intend "to require arbitration of any matter or claim which the courts of this jurisdiction have expressly held are not subject to mandatory arbitration." But instead of invalidating the agreement to arbitrate, the trial court should have resolved any ambiguity using principles of contract interpretation. (See Civ. Code, § 1652 ["Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract."]; *Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 922 [same].) In any event, the sole conflicting provision in the ADR agreement did not, standing alone, undermine the parties' intent to arbitrate employment-related disputes. (And, as we will explain, it is severable.)

18

B.     *The Arbitration Agreement Is Not Unconscionable*

1.     *Applicable Law and Standard of Review*

"The general principles of unconscionability are well established.  A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 125; see *Fuentes*, *supra*, 19 Cal.5th at p. 102-103.)  Unconscionability has a procedural and a substantive element.  (*Fuentes*, at p. 103; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, *supra*, 55 Cal.4th at p. 246.)  "The procedural element concerns 'the circumstances of contract negotiation and formation,' particularly 'oppression or surprise due to unequal bargaining power.' [Citation.]  The substantive element, by contrast, concerns 'the fairness of an agreement's actual terms,' i.e., whether those terms 'are overly harsh or one-sided.'" (*Fuentes*, at p. 103; see *Ramirez v. Charter Communications Inc.*, *supra*, 16 Cal.5th at p. 492.)

"'Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree.' [Citation.]  Courts 'apply a sliding scale analysis under which "the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."'" (*Fuentes*, *supra*, 19 Cal.5th at p. 103; accord, *Ramirez v. Charter Communications, Inc.*, *supra*, 16 Cal.5th at p. 493.)  Where, as here, the parties do not dispute the trial court's factual findings, our review is de novo.  (See *Fuentes*, at p. 102; *Ramirez*, at p. 493.)

19

2. *The Agreement To Arbitrate Had a Low Level of Procedural Unconscionability*

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" (*OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at p. 126; see *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [contract was adhesive where the agreement was "imposed on employees as a condition of employment and there was no opportunity to negotiate"]; *Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, 884 [same].) "Some procedural unconscionability is present whenever an agreement 'is a contract of adhesion, i.e., a "standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."' [Citation.] Although ordinary contracts of adhesion ""are indispensable facts of modern life that are generally enforced,"" they pose a ""clear danger of oppression and overreaching."" [Citation.] Because contracts of adhesion are ""not the result of freedom or equality of bargaining,"" we examine them carefully." (*Fuentes, supra*, 19 Cal.5th at p. 104; see *Ramirez v. Charter Communications, Inc., supra*, 16 Cal.5th at pp. 492, 494; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 67-68.)

Because Studebaker presented the agreement to arbitrate to Santana on a "take it or leave it basis," the agreement to arbitrate was an adhesive contract. Studebaker does not dispute the agreement to arbitrate exhibits a low level of procedural

20

unconscionability typically found in employment-related agreements, but it correctly argues the trial court erred in finding a high level of procedural unconscionability. The trial court, citing *Olvera v. El Pollo Loco, Inc.* (2009) 173 Cal.App.4th 447, ruled the conflicting terms in the agreement to arbitrate created a high level of procedural unconscionability. As explained, however, the purportedly conflicting terms identified by the trial court either did not conflict or, at most, created an ambiguity regarding some aspect of the agreement to arbitrate.

Moreover, unlike the documents in *Olvera v. El Pollo Loco, Inc.*, *supra*, 173 Cal.App.4th 447, the agreement to arbitrate here was not deceptive or misleading. In *Olvera* the employer distributed to its employees a summary, in English and Spanish, of employee benefits. Describing the new dispute resolution process, the summary stated: "'Any employee with a work-related problem should contact the General Manager, Area Leader, Human Resources Manager or other management person to resolve the problem. If all attempts to resolve the problem are unsuccessful, the new policy requires that the employee and the company use a mediator to assist them in reaching a resolution. See your General Manager for additional details.'" (*Id*. at p. 450.) The summary attached a series of pages described as a policies and procedures manual, in English only, which included a dispute resolution policy requiring binding arbitration of all employment-related disputes. (*Ibid*.) The accompanying acknowledgment, in English and Spanish, stated the employee received, understood, and agreed to the new dispute resolution policy. (*Id*. at p. 451.)

After an employee filed a wage-and-hour class action, the trial court denied the employer's motion to compel arbitration,

21

ruling the arbitration agreement was unconscionable.  Affirming the trial court's order, the court in *Olvera* held the arbitration agreement evidenced a high degree of procedural unconscionability.  Emphasizing the discrepancy between the employer's bilingual summary of the new dispute resolution policy (that required only mediation) and the actual policy presented only in English (that required binding arbitration), the court concluded the employer's materials were misleading.  The court held that, because the employer's deception likely prevented the employees from making an informed decision whether to agree to the dispute resolution policy, the degree of procedural unconscionability was high.  (*Olvera v. El Pollo Loco, Inc.*, *supra*, 173 Cal.App.4th at pp. 455-456.)  There are no such deceptive or misleading factors in this case.  The trial court erred in relying on *Olvera* to find a high level of procedural unconscionability.

### 3. *The Agreement To Arbitrate Was Not Substantively Unconscionable*

"The substantive unconscionability analysis 'examines the fairness of a contract's terms.  This analysis "ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as  ""overly harsh"" [citation], "'unduly oppressive'" [citation], "'so one-sided as to "shock the conscience""' [citation], or 'unfairly one-sided' [citation].  All of these formulations point to the central idea that the unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party.'"' [Citation.] . . . 'Ultimately, the question is whether [the nondrafting

22

employee], through oppression and surprise, was coerced or misled into making an unfair bargain.'" (*Fuentes*, *supra*, 19 Cal.5th at p. 106.)

As stated, the trial court ruled the agreement to arbitrate was substantively unconscionable for two reasons. It was incorrect on both points. First, the trial court ruled the waiver of the right to bring PAGA claims was substantively unconscionable. As explained, however, each of the three documents in the agreement to arbitrate contained a valid and enforceable PAGA waiver and reflected the parties' intent not "to require arbitration of any matter or claim which the courts of this jurisdiction have expressly held are not subject to mandatory arbitration." Because the agreement to arbitrate included a severance provision, the court should have severed the sole unenforceable (and inconsistent) wholesale PAGA waiver provision, rather than concluding the entire agreement to arbitrate was unenforceable.[5] (See *Viking River*, *supra*, 596 U.S. at p. 662 [applying an arbitration agreement's severance provision to sever an invalid portion of a PAGA waiver]; *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 797 [same].)

Second, the trial court erred in ruling the confidentiality agreement contained provisions that, when construed with the agreement to arbitrate, rendered the agreement to arbitrate unfairly one-sided. (See *Fuentes*, *supra*, 19 Cal.5th at p. 107;

---

[5] The ADR policy states: "In the event that any provision of this ADR Policy is determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable to any extent, such term or provision shall be enforced to the extent permissible under the law and all remaining terms and provisions of this ADR Policy shall continue in full force and effect." The California ADR agreement includes a similar provision.

23

*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 117.) "Our goal in interpreting the confidentiality agreements is to give effect to the parties' "'mutual intention"' at the time of their signing. [Citation.] To discern the parties' intention, we look first to the agreements' text." (*Fuentes*, at p. 108.) As discussed, we construe together multiple agreements signed at the same time regarding the same subject. (Civ. Code, § 1642; see *Silva v. Cross Country Healthcare, Inc.* (2025) 111 Cal.App.5th 1311, 1322-1323 [interpreting an arbitration agreement together with an employment agreement with a confidentiality clause]; *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 490-491 [interpreting an arbitration agreement together with a confidentiality agreement].) The confidentiality agreement states: "Employee acknowledges and agrees that due to the unique nature of this Agreement, there can be no adequate remedy at law for any breach of obligations hereunder, that any such breach may allow a party or third parties to unfairly compete with Company resulting in irreparable harm to Company. Therefore, upon any such breach or any threat thereof, Company will be entitled to appropriate equitable relief, in addition to all other forms of relief available to it, from a court of competent jurisdiction."

Confidentiality agreements that allow an employer (but not an employee) to seek injunctive relief are not necessarily substantively unconscionable. A "'contract can provide a "margin of safety" that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable.'" (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 117; accord, *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237,

1250.) And courts have recognized a legitimate commercial need to protect confidential, proprietary information and trade secrets. (See *Baltazar*, at p. 1250 [recognizing a "legitimate commercial need to protect [the employer's] 'valuable trade secrets and proprietary and confidential information' from public disclosure" such that a confidentiality provision favoring the employer did not render an arbitration agreement with the employee "unduly harsh or one-sided"]; *Alberto v. Cambrian Homecare, supra*, 91 Cal.App.5th at p. 492 ["provisions that allow employers to seek a preliminary injunction outside of arbitration for breach of a confidentiality agreement are not, by themselves, unconscionable, simply because they primarily benefit employers"]; *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 450-451 [provision allowing an employer to seek preliminary injunctive relief for breach of a confidentiality agreement was within the legitimate "margin of safety" for the employer and was not unconscionable].)

Some courts have found substantively unconscionable confidentiality agreements that relieve an employer of multiple, burdensome aspects of enforcing the agreement. (See, e.g., *Alberto v. Cambrian Homecare, supra*, 91 Cal.App.5th at p. 492 [recognizing a legitimate business need for injunctive relief, but holding "additional provisions that waive the employer's need to obtain a bond before seeking an injunction, waive the employer's need to show irreparable harm, and require an employee to consent to an immediate injunction *are* unconscionable" because "[t]hey exceed the legitimate 'margin of safety' for the employer and are not mutual"].) For example, in *Silva v. Cross Country Healthcare, Inc., supra*, 111 Cal.App.5th 1311 the court held substantively unconscionable "the employee's contractually

25

mandated concessions in the Employment Agreement (without similar concessions in the employees' favor) that the confidentiality, noncompete and nonsolicitation covenants are lawful, that any breach of those covenants 'will cause irreparable harm' to [the employer] (thereby justifying injunctive relief), that [the employer] (but not the employee) is 'entitled to temporary, preliminary and permanent injunctive relief,' and that [the employer] need not post a bond to obtain any such relief." (*Id.* at p. 1329.) The court in *Silva* held that, though an employer may have a legitimate need to seek injunctive relief for certain violations of its confidentiality agreement, the mandatory employee concessions went well beyond what was necessary to preserve that right. (*Ibid.*)

Contrary to the trial court's ruling, the confidentiality agreement in this case does not include the types of provisions courts have found substantially unconscionable. The confidentiality agreement in *Silva* stated the employee "'acknowledges and agrees that any breach'" of the confidentiality agreement provisions "'will cause irreparable harm to [the employer], for which a remedy in the form of damages will not be adequate or otherwise ascertainable.'" (*Silva v. Cross Country Healthcare, Inc.*, *supra*, 11 Cal.App.5th at p. 1319, italics omitted.) The confidentiality agreement in this case does not include a similar concession; it states a breach of the confidentiality agreement "*may* allow a party or third parties to unfairly compete" with Studebaker. The agreement in *Silva* also stated the employee "'agrees that [the employer] will be entitled to temporary, preliminary and permanent injunctive relief against'" the employee for a breach and "'agrees' that [the employer] is entitled to this injunctive relief 'without having to

26

post bond.'" (*Ibid.*, italics omitted.) In contrast, the confidentiality agreement in this case states only that Studebaker "will be entitled to appropriate equitable relief . . . from a court of competent jurisdiction," i.e., whatever relief a court determines is appropriate based on Studebaker's evidentiary showing. And the confidentiality agreement does not waive the bond requirement.

The trial court also erred in ruling the confidentiality agreement was one-sided because it exempted Studebaker from the requirement to arbitrate all employment-related claims, while requiring Santana to submit his claims to arbitration. To be sure, lack of mutuality in an arbitration agreement is a hallmark of substantive unconscionability. (See *Alberto v. Cambrian Homecare*, *supra*, 91 Cal.App.5th at p. 492 [the "'"paramount consideration in assessing . . . conscionability is mutuality"'"]; *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 910 [same], disapproved on another ground in *Ramirez v. Charter Communications, Inc.*, *supra*, 16 Cal.5th at pp. 505-506.) "Courts have found a lack of sufficient mutuality where the agreement exempts from arbitration the types of claims an employer is likely to bring against an employee." (*Davis*, at pp. 914-915; see *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 634 ["'[c]ourts have found one-sided employer-imposed arbitration provisions unconscionable where they provide that employee claims will be arbitrated, but the employer retains the right to file a lawsuit in court for claims it initiates, or where only the types of claims likely to be brought by employees (wrongful termination, discrimination etc.) are the only ones made subject to arbitration'"].)

But the trial court erred in interpreting the confidentiality agreement to exempt Studebaker from the requirement to arbitrate its employment-related disputes. The court interpreted the remedies provision in the confidentiality agreement to mean Studebaker could seek equitable relief and "all other forms of relief available to it"—under both the confidentiality agreement and the arbitration agreement—in court. This interpretation rendered as surplusage Studebaker's agreement to arbitrate claims against Santana for "theft of money or trade secrets, breach of a confidentiality Agreement, or breach of a contract"; "[a]ny claim the Company may enjoy against employees, regardless of the nature, arising from the employment relationship"; and "any and all claims arising out of the employment relationship it may enjoy against [Santana]." (See *Yahoo Inc. v. National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 69 ["Courts will favor an interpretation that gives meaning to each word in a contract over an interpretation that makes part of the writing redundant."]; *Coral Farms, L.P. v. Mahony* (2021) 63 Cal.App.5th 719, 727 ["Contracts 'are construed to avoid rendering terms surplusage.'"]; *Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 753 ["The way we define words [in a contract] should not produce redundancy, but instead should give each word significance."].)

Rather than interpreting the confidentiality agreement to conflict with the agreement to arbitrate or to render multiple provisions in the agreement to arbitrate surplusage, we interpret the agreements in harmony with one another. (See Civ. Code, § 1652; *Robles v. City of Ontario* (2024) 106 Cal.App.5th 574, 582 [courts "must also endeavor to give effect to every part of a contract"]; *Condon-Johnson & Associates, Inc. v. Sacramento*

*Municipal Utility Dist.* (2007) 149 Cal.App.4th 1384, 1398 [courts must make every effort reasonably possible to give meaning and effect to every clause in the contract]; *Friedman Prof. Management Co., Inc. v. Norcal Mutual Ins. Co.* (2004) 120 Cal.App.4th 17, 33 [courts must interpret contracts "to try to give effect to every clause and harmonize the various parts with each other"].)  Reading the agreement to arbitrate and the confidentiality agreement together and giving meaning to all the provisions, we interpret the agreements to require Studebaker to arbitrate its employment-related claims against Santana, including any claim for breach of the confidentiality agreement. In addition to the relief available in arbitration (i.e., "all other forms of relief"), Studebaker may also seek equitable relief (i.e., an injunction) in court.

Finally, the trial court erred in ruling the confidentiality agreement provided Studebaker "only needs to prove a breach or threat of a breach, and not the other elements, to be entitled to an injunction."  "In determining whether to grant a preliminary injunction, the trial court ""evaluate[s] two interrelated factors . . . .  The first is the likelihood that the plaintiff will prevail on the merits at trial.  The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued.""" (*Santa Clara Valley Water District v. Eisenberg* (2025) 117 Cal.App.5th 714, 727.)  The confidentiality agreement does not relieve Studebaker of the burden to establish either a likelihood of success at trial or interim harm.  The confidentiality agreement provides only that a breach of that agreement "may" allow a third party to unfairly compete with Studebaker.  It does not include an agreement or

concession by Santana that a breach of the confidentiality agreement will necessarily result in harm to Studebaker, nor does it contain any other provision diminishing the proof required to obtain an injunction.

## DISPOSITION

The order denying Studebaker's motion to compel arbitration is reversed. The trial court is directed to enter a new order granting the motion to compel arbitration. Studebaker is to recover its costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.

Filed 4/22/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| J. ASENCION SANTANA, | B343640 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24STCV12865) |
| v. | ORDER CERTIFYING OPINION FOR |
| STUDEBAKER HEALTH CARE CENTER, LLC, | PUBLICATION (NO CHANGE IN THE APPELLATE JUDGMENT) |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed April 7, 2026 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c).

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____
SEGAL, Acting P. J.          FEUER, J.          STONE, J.